**J. M. LEE, as Comptroller of the State of Florida, v. THOS. B. DOWDA and JOE C. JENKINS as citizens and taxpayers in their own rights and for the benefit of others similarly situated.**

19 So. (2nd) 570                                        June Term, 1944
October 31, 1944                                              En Banc

J. *Tom Watson*, Attorney General, *George M. Powell*, and *Frank J. Heintz*, Assistant Attorneys General, for petitioner.

*Thomas B. Dowda, Joseph C. Jenkins* and *J. Bamberg Harrell*, for respondents.

BROWN, J.:

The respondents here, plaintiffs in the court below, filed a bill in equity in the Circuit Court of Leon County against the petitioner here, defendant in the court below, to require the defendant as Comptroller of the State of Florida, by way of mandatory injunction, to carry out Section 14 of the General Appropriation Bill adopted by the Legislature of 1943 which section had been vetoed by the Governor, alleging in the bill that the Governor's veto was invalid. The respondent Comptroller filed a motion to dismiss the bill. The chancellor denied the motion to dismiss and transferred the cause to the law side of the docket, evidently upon the theory that plaintiff's appropriate remedy was by mandamus rather than by mandatory injunction. Defendant Comptroller seeks review of this order, denying the motion to dismiss the bill, by certiorari under Rule 34. Upon oral argument in this Court, counsel for the respective parties are in substantial agreement as to the controlling questions involved, which are (1) whether or not the Governor's veto was authorized under the Constitution, and (2) whether or not Section 14 could have been constitutionally embraced in the appropriation bill under Section 30 of Article III of our Constitution. As we consider the last question determinative of this case we will address ourselves to that first.

Section 14 of the General Appropriation Bill which bill was adopted by the Legislature and now appears as Chapter 22071, Laws of 1943, with the exception of those sections which were vetoed by the Governor, reads as follows:

"Section 14. All disbursements made under the appropriations provided for in this Act together with all other disbursements made by the Comptroller's warrant, countersigned by the Governor, shall be classified according to personal services, travel expenses, contractual services, supplies, equipment, capital outlays and such other classification as

may be prescribed by law and such detailed classifications shall be printed in the Comptroller's annual reports and shall be adopted by the State Budget Commission as the classification of accounts in the preparation of the budget of the State of Florida."

The reasons given by Governor Holland, as alleged in the bill, for vetoing said Section were as follows:

"(a) It would require a greatly enlarged personnel in the Comptroller's office to keep the accounts required.

"(b) It would require the purchase and maintenance of bookkeeping and tabulating machines and other office equipment now unobtainable and unlikely to be obtainable during our present national emergency and for a considerable time after its end.

"(c) Due also to the requirements of the nation for man power, competent personnel for this additional work is not, and probably will not be available.

"(d) No provision is made for the added expense involved."

Section 18 of Article IV of the Constitution provides that:

"Section 18. The Governor shall have power to disapprove of any item or items of any bills making appropriations of money embracing distinct items, and the part or parts of the bill approved shall be the law, and the item or items of appropriations disapproved shall be void, unless repassed according to the rules and limitations prescribed for the passage of other bills over the Executive veto."

The contention of the respondents is that Section 14 of the bill was not "an item or items of a bill making appropriations of money embracing distinct items," and that therefore the Governor's veto was invalid.

The circuit judge was of the opinion, and so held, that said Section 14 of the appropriation bill was obnoxious to Section 30 of Article III of the Constitution, except in so far as the same provides as follows:

"Section 14. All disbursements made under the appropriation provided for in this Act . . . shall be classified according to personal services, travel expenses, contractual services, supplies, equipment, (and) capital outlay. . . ." and that the

provisions and requirements of said Section, except as above quoted, were properly stricken and eliminated by the veto complained of. The honorable circuit judge was also of the opinion that because of the limitations imposed by the title of the act, there was grave doubt whether the title was sufficient to authorize any other provisions relating to accounting other than those above quoted.

But the second question involved here involves a still more important and fundamental question. Section 30 of Article III of the Constitution of 1885, is exactly the same as Section 30 of Article IV of the Constitution of 1868. That Section reads as follows:

"Section 30: Laws making appropriations for the salaries of public officers and other current expenses of the State shall contain provisions on no other subject."

It is manifest that the Constitution considered this matter of appropriation laws so important that it required they should be freed from all log rolling, by putting into such bills riders dealing with any other subject whatsoever, so that the attention of the Legislature should be concentrated upon the wisdom of and the necessity for the several items of appropriations made by and enumerated in the bill, and so also that the public could rest assured that when an appropriation bill was up for consideration in the Legislature nothing would be considered but the appropriations, and that this important matter should not be prejudiced by the injection into the appropriation bill of any other matters, regardless of their inherent merits or demerits.

The first two occasions on which this Court construed this Section of the Constitution were in advisory opinion to the Governor reported in 14 Fla., pages 283 and 285. Both of these opinions were written for the Court by that eminent Florida jurist, Justice JAMES D. WESTCOTT, JR. The first opinion is very short. The Governor wanted to know whether a section in a general appropriation bill which provided that comptroller's warrants and treasurer's certificates issued since the first day of January 1872, except for services rendered prior to that date, should be receivable for all State dues incurred since January 1, 1872, excepting interest on

the public debt, sinking fund and school fund was constitutional. The opinion said:

"The effect of the clause of the Constitution which you mention is to render everything in a law which may be called strictly 'a law making appropriations' unconstitutional which proposes to do anything other than make appropriations. The third section of the 'General Appropriation Bill,' which you call to our attention, does not make an appropriation, and for this reason it is in our opinion unconstitutional and therefore void.'"

In the next advisory opinion commencing on page 285 of 14th Fla., the Court was dealing primarily with the constitutionality of a section contained in an act for the assessment and collection of revenue. But in the opinion this same section of the Constitution was construed in connection with the section relating to raising revenue. The Court said:

"Section 2 of Article XI of the Constitution requires that the Legislature shall provide for raising revenue sufficient to defray the expenses of the State for each fiscal year, and also a sufficient sum to pay the principal and interest of the existing indebtedness of the State. Sec. 30 of the IVth Article provides that laws making appropriations for the salaries of public officers and other current expenses of the State *shall contain provisions on no other subject.* If any two subjects may be said to be cognate those embraced in these two sections would fall under that description, and yet the Constitution has expressly declared that laws making appropriations for salaries and current expenses shall contain provisions on no other subject. It would seem to follow from this that the spirit, if not the letter of the Constitution, renders the junction of a law making appropriations for salaries and other current expenses with any other subject obnoxious to the charge of a violation of its provisions. But if any doubt could exist with regard to this, that doubt is relieved by a reference to the 14th Section of the IVth Article which ordains that "each law of the Legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title." Here we have a general provision denouncing the

union in one law of two distinct subjects, and limiting the exercise of legislative power in the enactment of a law to the subject expressed in the title. With regard to the subject of appropriations the provision is specific, thus showing beyond question the intention of the framers of the Constitution to be to confine a law making appropriations for salaries, etc., to this one subject. And they were not content to leave the matter where it was placed by the general provision above mentioned. Laws making appropriations for the purposes mentioned shall contain provisions on no other subject. This is explicit. In the enforcement or construction of such law, the court cannot regard a provision embracing any other subject, for to do this they would themselves be disregarding their duty and become parties to a violation of the Constitution. And it matters not whether the subject of appropriations be the one embraced in the title or not. In discharging their duty a court must give effect only to the subject of appropriations, if that be the one embraced in the title, or if it is not, then it cannot give it operation, for in either case its joinder with another subject would be a violation of the Constitution. It would not, however, result from this that a specific provision for the payment of expenses, necessary, proper, incidental, or growing out of a law itself, or which may be deemed needful in carrying it or its subject into execution, would not be valid, because such a provision, being matter properly connected with the subject of the law as expressed in the title, would not be prohibited by the Constitution. For instance, the provisions for the payment of the persons employed, and the expenses of all kinds incurred in the assessment and collection of the revenue, are matters properly connected with such assessment and collection, and cannot be disconnected therefrom. But as to appropriations of a general character, such as for salaries and current expenses, the Constitution has not left their connection with another subject discretionary. It has plainly prohibited it."

While advisory opinions to the Governor are not binding judicial precedents, they are frequently very persuasive and usually adhered to. The two opinions above mentioned have

never been criticised or departed from since they were written in so far as we have been able to discover. This construction of Section 30 of Article III is strengthened when considered in connection with the language of Section 18 of Article IV, above referred to, which gives the Governor power to "veto any item or items of any bills making appropriation of money embracing distinct items." The two advisory opinions above quoted from were cited with approval in the case of Amos v. Mosely, 74 Fla. 555, 77 So. 619, and in that case this Court held that the purpose of the provision in Section 30 of Article III, providing in effect that a general appropriation bill shall not contain provisions on any other subject, was to prevent including in bills to appropriate money to carry on the government of the State measures foreign to that purpose, and by taking advantage of the necessity of the State, force the Legislature to adopt them, or stop the entire machinery of the government for want of funds to carry it on.

"An item of an appropriation bill obviously means an item which in itself is a specific appropriation of money." Bengson v. Secretary of Justice, etc., 299 U. S. 410, 81 Law ed. 312.

Said Section 14 does not purport to change the amount of any payment, or date of any payment, or the person to whom any payment is to be made. It uses the language "All disbursements made," etc., and we do not see how a system of accounting or classification can come into operation until *after* the disbursements are made. Nor does this Section amount to a provision for a condition precedent to payment. Section 14 is in no sense an appropriation, nor can it be considered as "an item" in an appropriation bill, such as the Governor can veto under Section 18 of Article IV. The attempt to include the same in the general appropriation act of 1943 was in our judgment plainly in violation of the above quoted provisions of Section 30 of Article III.

We have carefully considered the able arguments of counsel for the respective parties, including the citations of the decisions in other states as set forth in their briefs, but we find nothing that would lead us to depart from the plain language of Section 30 of Article III of our Constitution and

our previous opinions so clearly construing it. Our conclusion is that under said Section 30 of Article III, the inclusion of Section 14 in the general appropriation act of 1943 was not authorized and that said Section was unconstitutional and void. Therefore the plaintiffs in the court below were not and are not injured by the Governor's veto of a section which was already void.

Certiorari is therefore granted and the order of the court below, herein brought before us, is hereby quashed.

TERRELL, CHAPMAN, THOMAS, ADAMS and SEBRING, JJ., concur.

BUFORD, C. J., concurs specially and dissents in part.

BUFORD, C. J., Concurring specially and dissenting in part:

I concur in what has been said in the opinion prepared by Mr. Justice BROWN except what is there said concerning the power of the Governor to veto Section 14 of the Act here under consideration.

In short, Section 30 of Article III of the Constitution of 1885 requires that laws such as Chapter 22071, Acts of 1943 shall contain nothing except "items" of appropriations. It therefore contemplated that each provision of such legislative Act would necessarily constitute an "item" of appropriation.

So, when it was provided in Section 18 of Article IV of that Constitution that,

"The Governor shall have power to disapprove of any item or items of any bills making appropriations of money embracing distinct items, and the part or parts of the bill approved shall be the law, and the item or item of appropriation disapproved shall be void, unless repassed according to the rules and limitations prescribed for the passage of other bills over the Executive veto.", the intent and meaning was, and is, that the Governor has power to disapprove and veto any separate and distinct provision appearing in such bill. As used in this Section 18, the word "item" should be construed to mean "provision."

If this be not true, then in such cases as this the Governor would be required to veto the entire appropriation bill or else allow it to become a law carrying on its face provisions which

because of their inclusion being in violation of the Constitution are void and of no legal effect. Such result would defeat the very purpose of Section 18, supra.