MATHEWS, Justice
(dissenting to opinion, concurring to order).
This is an original mandamus proceeding to determine whether or'nOt Senator Charley E. Johns, now Acting Governor' of Floridá, is eligible to be elected Governor of the State of Florida for the balance of 'the unexpired term of the late Dan T. McCartyj beginning on the first Tuesday after the first Monday in January, 1955.
. In re Advisory Opinion to Acting Governor Johns, Fla., 67 So.2d 413,. we held that Senator Johns was Acting Governor of the State of , Florida by reason, of the death of the late Dan T. McCarty, and in the case of State ex rel. Ayres v. Gray, Fla. 1953, 69 So.2d 187, we held that an election was required in November, 1954, to fill that part of the unexpired term of the late Dan T. McCarty, beginning on the first Tuesday after the first Monday in January, 1955.
In the General Election in November, 195.2, Senator Johns was elected a member of the Senate for a term of four years ending in November, 1956,: and his term "as a State Senator will continue during that portion of the unexpired term of the late Dan T. McCarty from the first Tuesday after the first Monday in January, 1955, until November, 1956.
Section 5 of Article III of the State Constitution, F.S.A., is as follows:
“No Senator or member of the House of Representatives shall during the time for which he was elected, be appointed, or elected to any civil office under the Constitution of this State that has been created, or the emoluments, whereof shall have been increased during such time.”
On the 5th day of January, 1954, the State Budget Commission, acting upon a letter and request from Acting Governor Johns with reference to the salary of the Governor, adopted the following Resolution:
“It is Hereby Resolved that Item 22 of the Appropriation Act of 1953, being the appropriation for the Office of Governor, be adjusted and revised by a reduction of $3,000.00 per year in the amount therein appropriated for the salary of the Governor, so that the salary as adjusted and reduced, will be $12,000.00 per year, effective September .29, 1953, and .irrevocably for the remainder of the current biennium.”
- The petitioner alleges that the General Appropriation Act for the year 1953, the same being Chapter 28115, increased. the salary of the Governor from $12,000 to $.15,000 per annum and that, by reason of such increase in salary during the session of the Legislature for 1953, Senator Johns became ineligible to be elected to'the ófftce of Governor by reason of the provisions of Section 5, Article III of the Constitution of the State, and that the action of the Budget Commission in adopting the aforementioned Resolution was an unconstitutional delegation of legislative power and authority, and therefore did not remove the ineligibility of Senator Johns to be elected Governor of 'the State of Florida for the. time specified.
In the motion to quash the alternative writ, filed by Senator Johns, he takes issue with the petitioner and raises the further question that the so-called “Gomez Clause”, which is F.S. Section 111.01(4) F.S.A., removes his ineligibility to be elected Governor even though the General Appropriation Act of 1953 increased the salary of the office of Governor. The so-called Gomez Claúse was a part of Chapter 22913, Laws of Florida 1945,‘as amended by Chapter 24035, Laws of Florida 1947, and has been carried forward in each revision of the statutory law since its first appearance in Florida Statutes, F.S.A., notwithstanding the unanimous opinion of this Court in the case of State ex rel. Fraser v. Gay, 158 Fla. 465, 28 So.2d 901, 902. The so-called Gomez Clause reads as follows:
“Any member of the legislature who may during the time for which he was elected senator or member of the house *482 of representatives, be appointed or elected to a civil office referred to in section 5, article 3 of the constitution ■shall receive during the term for which he was elected or appointed to such civil office the salary or emoluments which under the provisions of law appertain tb such office at the beginning of the time for which he was elected senator or member of the house of representatives.”
For us to say that the legal salary of the office of Governor is $12,000 or $15,000 per annum and say nothing more would leave unanswered fundamental questions of constitutional law which involve our entire system of constitutional government.
In considering the various questions presented, the Constitution as construed by former decisions of this Court is our guiding star. We should apply the provisions in the Constitution and the laws enacted pursuant thereto as we find them and not to satisfy some wish or desire of the moment. The Constitution should not mean one thing when , applied to one man and another thing when applied to another man. The importance or the number of those affected should have no consideration in applying the Constitution. It may at times appear that some provision of the Constitution has served its useful purpose by reason of change in time and conditions, and if that be true then the Constitution should be amended in the manner and by the method provided for in the document itself. It should never be changed or amended by legislative fiat, executive usurpation or judicial interpretation. It has been suggested that Section 5, Article III of the Constitution, has served its useful purpose and that this Court should amend the Constitution by striking down such provision. The very suggestion is contrary and antagonistic to the whole plan of constitutional government. To follow such a suggestion it would be necessary for the members of this Court, composed of seven men, to exercise all of the power of a Constitutional Convention and of the people themselves in amending the organic law. It is' a dangerous and revolutionary doctrine to advocate the amendment of the Constitution' by any such method. State ex rel. West v. Butler, 70 Fla. 102, 69 So. 771.
The Resolution of the Budget Commission was based on the assumption that the Appropriation Act of 1953 raised the salary of the office of Governor from $12,000 to $15,000 per year and that Section 12 of the Appropriation Act, F.S.A. § 215.38, delegated authority to the Budget Commission to reduce such salary in the manner attempted. The position of the respondent Johns that the so-called Gomez Clause removed his ineligibility to be elected to the office of Governor likewise assumes that the Appropriation Act raised the salary of the office of Governor, but that such raise does not apply to him because he can only receive $12,000 per' year which was the salary of the office of Governor at the time he became a Senator.
In order to properly • answer the questions it is necessary to determine, (1) the effect of the Resolution of the Budget Commission, (2) what effect, if any, the so-called Gomez Clause has upon the eligibility of the respondent, and (3) whether or not the salary of the'office of Governor was actually increased by the Appropriation Act of 1953.
The action of the Budget Commission in adopting the above quoted Resolution was an absolute nullity in attempting to reduce the salary of the office of Governor of any one else lawfully performing the duties of Governor.
The salary of the Governor was either increased or not increased by the Appropriation Act. If it was not increased, there is nothing to talk about. If it was increased, it remains increased until changed by the Legislature. The power to decrease such salary cannot be delegated to the Governor, the Budget Commission, or anyone else. However, the power delegated to the Budget Commission was to “adjust or reduce the budget of any department or board”. The power was limited and did not attempt to include the power to reduce the salary of the Governor who is the chief member of the Executive Department of the government.
*483 If Section 12 can be construed as authority to reduce the salaries of constitutional officers, then we are headed back to that form of tyranny and despotism which our constitutional system was designed to prevent. Prior to the adoption of the Declaration of Independence and our constitutional , system of government, it was recognized that when the power to make the law, the power to declare what the law is, and the power to execute the law were vested in one man or body of men, tyranny and despotism is the inevitable result. It was this kind of government which the Colonies rebelled against and declared their independence from. The various abuses of the King 'df England were set forth in the Declaration of Independence, and among them was the charge, “He hath made judges dependent on his will alone, for the tenure of their offices, and the amount and payment of their salaries”.
Section 29 of Article IV of the State Constitution definitely fixed the salary of the Governor. The last sentence of the Section provides that eight years after the adoption of the Constitution, the Legislature and it alone may increase or decrease the salary so fixed by the 'Constitution.
A subject may be legislative-by reason of custom and usage or it may be solely within the province of the Legislature because of a‘constitutional declaration to that effect. In the present case in addition to custom and usage as shown by the history of our constitutional system, under Section 29, Article IV of the State Constitution, the power to increase or decrease the salary of the Governor was vested solely and exclusively in the Legislature.
In the case of Thomas v. State ex rel. Cobb, Fla., 58 So.2d 173, 178, the rule as stated in State ex rel. Murphy v. Barnes, 24 Fla. 29, 3 So. 433, was quoted:
“ * * * When a constitution directs how a thing shall be done, that is in effect a prohibition to its being done in any other way.”
In the same opinion, the following illustration was given:
' “For example, had there been absolutely nothing in the Constitution with reference to the payment of the salaries of county officers, the Legislature would have been all-powerful in respect to this subject; but when the Constitution made specific provisions with reference to this matter, it amounted in effect to a prohibition in the exercise of the power in any other way.”
The statute involved attempted to authorize the State Board of Education to prescribe qualifications for county superintendents of public instruction, and this Court held:
“(2) The Legislature is prohibited from adding to or taking from the qualifications of the Superintendent of Public Instruction so as to make the same different from those prescribed in the Constitution.
* * - * * * *
“(4) The Legislature, not having the power or authority to prescribe these additional qualifications for this office, had no authority to delegate to any board, or boards, the authority to prescribe additional qualifications”.
The same principle of constitutional law and construction applies to “increasing or decreasing” the salary of the Governor as to prescribing qualifications as was attempted in Thomas v. State ex rel. Cobb, supra.
Thomas Jefferson was not a member of the Constitutional Convention of 1787, because he was in France representing his country. However, he wrote Madison to the effect that the most important thing to consider in framing the Constitution was that there should be three separate departments of government — legislative, judicial and executive — and that no department of government should perform any of the powers or duties properly belonging to the other.
We find in the ■ Constitution that the advice of Jefferson was followed, and that three separate; distinct and independent departments of government were created
*484 After Jefferson returned from France, he was made Secretary of State by President Washington, and while holding this office, he was informed that Virginia was to permit Kentucky to become a separate state, and that Kentucky was about to adopt a constitution. He immediately advised that the first safeguard to be put into the Kentucky Constitution should be to confine absolutely and exclusively to each one of the three departments of government, the powers belonging to it alone.
He wrote this section of the Kentucky Constitution, which became Article I, and sent it to the Convention. When the delegates learned who was the author of the article, history records that, “The respect of Kentucky for the great name of Jefferson carried it through, and it was at once adopted.”
Today, every state constitution contains a provision similar to that of Kentucky, with reference to three independent departments of government.
James Madison, John Adams, Alexander Hamilton, and others 'were contemporaries of Jeffeirson, and took'a vital part in the formation of the Union; It may be well to review briefly what some of these men thought of this fundamental idea of Jefferson.
In Volume I,. No. IS of the Federalist/, page 353, Madison states that each department of government should be as little dependent as possible on the others. Continuing, Madison said “Neither of them ought to possess, directly or indirectly, any overruling influence in the administration of their' respective powers. It will not be denied that power is of an encroaching na- ' ture, and that it ought to be effectually restrained from passing the limits assigned to it.”
During the same period, John Adams attempted to explain clearly to the people why they must keep the three branches of the government separate and distinct. It was his view that in order-to establish, maintain-and preserve a republic, it was necessary to eliminate arbitrary power and unchecked authority. He pointed out that any government in which one body, whether king or - legislature, both malees the laws and executes them, is essentially an arbitrary government; on the other hand, it was the very essence of a free republic that no man, or set of men, should ever have power to make a law, to decide whether it had been violated, and to execute judgment on the violator.
George Washington’s farewell address was the result of the combined thinking and authorship of Madison, Hamilton and Washington and probably others. They fully recognized the necessity of three departments of government and that no department should encroach upon the powers of either of the other departments. Washington said:
“It is important, likewise, that the habit of thinking in a free country should inspire caution, in those interested with its administration, to confine themselves within their respective constitutional spheres, avoiding in the exercise of the powers of one department to encroach upon another. The spirit of encroachment tends to consolidate the powers of all the departments in on.e, and thus to create, whatever the form of government, a real despotism. A just estimate of the love of power, and proneness to abuse it, which'pre-. dominates in the. human heart, is suffi-dent to satisfy us of the truth of this position.. The necessity of reciprocal checks in, the exercise of political power, by dividing and distributing it into different depositories, and constituting each the Guardian of the Public Weal against invasion by the others, has been evinced by experiments, ancient and modern; Some of them in our country and under our own eyes. To preserve them is just as necessary as to institute them. If, in the opinion of the people, the distribution or modification of the constitutional powers be in any particular wrong, let it be corrected by an amendment in the way which the constitution designates. .But let there be no change by usurpation; for, though this, *485 in one instance, may be the instrument of good, it is the customary weapon by which free governments are destroyed. The precedent must always greatly over-balance in permanent evil any partial or transient benefit which the use may at any time yield.”
In our plan of constitutional government as set forth in the Constitutions of the United States and of the State of Florida, the evil of having all departments of government exercised by one man or body of men was recognized and guarded against. These constitutions provided for three independent branches of the government.
Article II of the Constitution of the State of Florida is as follows:
■. “The powers of the government of the State of Florida, shall be divided , into, three departments; ••Legislative, Executive and Judicial; and no person properly belonging to one of the departments shall 'exercise any powers appertaining to either of the others, except in cases expressly provided for by this Constitution.”
In and by Section 29-of Article IV, State Constitution, the question of the salary of: the Governor was fixed by the Constitution until eight years after the adoption of that instrument and then the power to increase or decrease such salary of the office of Governor was committed absolutely and unconditionally to the Legislature and it alone. ' '■
The same is true with reference to the members of the Cabinet, • the Supreme Court, Judges of the Circuit Courts, and State Attorneys. There would be no limit to what could happen should this. Court approve the doctrine that the Legislature may abdicate its .powers to fix salaries of constitutional officers and vest such power in the Executive branch of the government. If the members of the Cabinet refused to vote as requested by the Governor, or if the members of this Court, or the Circuit Courts, rendered opinions distasteful to the Executive, he would be empowered to inflict punishment in accordancé ‘ with his wishes by reducing the salaries of such constitutional officers. Such a scheme is repugnant and abhorrent to our constitutional system of government and would utterly destroy that independence of the three departments of government, which is the guarantee of the people against tyranny and despotism.
It is urged that the salary of the Governor was increased to $15,000 per annum by the Appropriation Act but that now the salary has been decreased by the Budget Commission acting under the supposed authority vested in it by Section 12, Chapter 28115, Laws of Florida 1953.
This very thing was attempted in the case of State ex rel. Fraser v. -Gay, supra. In the Fraser case the Legislature itself.wrote into the law increasing the' salary of the Comptroller the so:called “Gomez Clause”. This was not cm attempted delegation of power by the Legislature but was a direct attempt by the Legislature ■to-exercise the power itself so as to make eligible any member of the Legislature appointed or elected to another ‘civil office by limiting him to the salary existing at the time he was elected to the Legislature. After having been elected Comptroller,- Fraser- attempted to take office and- claimed to .be eligible by reason’ of the proviso and-his willingness to abide by the same. In an exhaustive opinion written by M,r. Justice Terrell, concurred in by Justices, Thomas, Buford, Chapman, Adams; Barns and Associate Justice Fabisinski, after 'reviewing the constitutional''history concerning this matter ’ and quoting at length' from Story, Madison and Mason, it was said:
“Section 5 of Article III of the Constitution in words as clear , as can be stated bars any member of' the Senate or House of Representatives from election or appointment to certain civil, offices during the time for which he was elected to the legislature and the office of Comptroller is, by reason of the salary raise in Chapter 22913 with- ' ■in the forbidden class. The terms of Section 5, Article III are so clear and ’ direct that they defy misinterpretation. Any one who reads English can inter *486 pret them. To offer an interpretation other than their clear meaning imports would- be a distortion of the English sentence. The test of. the validity of the quoted provisions of the acts is whether or not they hamper the operation of the constitutional mandate.
******
. "It therefore necessarily follows that the intent of Section 5, Article III of the Constitution was to preclude members of the legislature from election to or appointment to any civil office that is created or the emoluments thereof increased during the time for which they are elected. Chapter 22913 raised the salary of the Comptroller from.$7,500 to $9,000 per year. Subsection (4) of Section 1 of this act attempts to. overcome, the constitutional prohibition by permitting the raise in salary- during the period for which they are elected to1 the legislature. Section 7 of Chapter 22827, General Appropriation Bill for all salaries and expenses, is not materially different in result. It limits the salary of State officers to the amount appropriated in the act and then attempts to make members of the legislature eligible to election or appointment to them by remitting the increase in the same manner as Chapter 22913.
"* * * ¡† fhis be true certainly it cannot avoid the constitutional prohibition by remitting the raise in salary fpr the period of this election to the legislature. A more conclusive reason is that if the assaulted provisions of the two acts are permitted to stand, Section 5 of Article III is circumvented and its practical purpose nullified.” (Emphasis supplied.) [158 Fla. 465, 28 So.2d 902],
In the 1953 Appropriation Act the Legislature itself did not attempt to remit a portion of the salary of the Governor but it is contended that in and by Section 12 of the Act, the Legislature attempted to delegate the authority to the Governor or to the Budget Commission. . If the Legislature could not avoid the constitutional prohibition by remitting the raise in salary, how can it now be said that the Legislature can delegate such authority to the Governor.or the Budget .Commission. If Section 12 of the Appropriation Act can be so construed, then Section 5 of Article III “is circumvented and its practical purpose nullified.”
The Legislature cannot delegate a power which it does not itself possess. Thomas, v. State ex rel. Cobb, supra. If it be beyond the power of the Legislature to remit the increase, then the power to do so cannot be delegated to any board, commission or bureau or to the Governor himself.
The action of the Budget Commission in attempting to decrease such salary is an absolute nullity, and ' is an outstanding example that “power is of an encroaching nature”. - '
The respondent, insists that Section 5 of Article III of the State Constitution has served its usefulness and that the public welfare now requires that this Court should strike it down or that we should re-examine the so-called Gomez Clause and our opinion in the case of State ex rel. Fraser v. Gay, supra, and recede from that opinion on find and determine that the opinion in that case does not apply to the respondent.
It may be true that the provisions of Section 5, Article III of the State Con-, stitution, as applied to elective offices has served its usefulness and that the Constitution should be amended by eliminating or repealing such section. If such be the case, then it should be repealed in the manner and by the method provided for in the Constitution itself and not by a majority of this Court, composed of seven men. This Court should refuse to arrogate-to itself any such power.
It would be a revolutionary and dangerous doctrine for this Court to adopt a policy that it could by-pass the requirements about a constitutional convention or the requirements about submitting amendments by , the Legislature to the vote q.f the people *487 upon such proposed amendments. If we can repeal or amend one section of the Constitution by this method, then we can do away with all of the requirements of the Constitution about amendment or repeal and proceed to determine that certain sections of the Bill of Rights or' other sections of the Constitution no lpnger serve a useful purpose, in our opinion, and that the public welfare requires the repeal or amendment of such sections. By adopting such an expediency, the Constitution may be amended or revised in accordance with the will of the majority of this Court very speedily and economically and thereby save the time and expense of a constitutional convention or a proposal by the Legislature and a vote, by the people. Such a procedure would nullify completely the. requirements of the Constitution with reference to amendment or repeal, and substitute a government of men for our constitutional system of government under and regulated by law.
We have re-examined the opinion in the case of State ex rel. Fraser v. Gay, supra. It is true that it was stated in that opinion:
. “We do not hold the challenged provisions-of Chapters'22827 and 22913 to -be bad ab initio. A set of circumstances might arise in which they could be upheld, but we find no reasonable basis to uphold either of them against .the attack in this case.” (Emphasis supplied.)
The above quoted isolated sentence was simply one sentence of a paragraph in a lengthy and well reasoned opinion. After having made the above statement the Court finished that paragraph as follows:
“The relator was a member of the Senate that raised the Comptroller’s salary, his term does not expire till ’ November 1948, so he is "clearly within the class declared to b¿ ineligible for election or appointment to another civil office by resigning from the legislature. Tf this be true certainly it cannot avoid the constitutional prohibition by remitting the raise in salary for the period of this election to the legislature. A more conclusive reason is that if' the assaulted provisions of the two acts are permitted to stand, Section 5 of Article' III is circumvented and its practical purpose nullified.” •' ■
The main difference in the Fraser case and the case at bar is that in the Fraser case the name was Fraser, the office of Comptroller was involved. Fraser had been nominated by the State Democratic Executive Committee and elected in a general election where there was no other name on the ballot but where another. name was written in as provided by law. The case happened in 1946. In the present casé, the name is Johns, the office -of Governor is involved, there will be a primary nomination instead of a nomination by a State Committee and the' year is 1954.
If, as stated in the opinion in State ex rel. Fraser v. Gay, supra,-the Gomez Clause is permitted to stand, § 5, Article III of the Constitution is circumvented and its practical purpose nullified, ‘then the same is true today. The opinion in the Fraser case was unanimous. If- such- was- good law in 1946, -it is good law in 19-54. We do -not recede fro-m, or overrule, -the opinion, in that' case. ■ ■ ■■
We now come to the primary question involved in this litigation. Did Chapter 28115, being the General Appropriation Act of 1953, increase the salary of the Govern- ■or? '
In compliance. with Section 16, Article •III, and Section 29 of Article IV of the State Constitution, F.S. Section 11-1.01 F.S. A., which is a part of Chapter 22913, General Laws o-f 1945, as amended by Chapter 24035, Laws of 1947,' increased the salary of the Governor to $12,000 per annum. ' This section was reenacted in-1953.
At the same session, 1 that' is, the 1953 Session, the Legislature -enacted- Chapter 28115, which is a Genéral Appropriation Bill.
*488 In Chapter 28115, General Laws of 1953, page 351,-subsection 22, there, appears the following: . , :
‘‘Governor — 'Office of
- “a. Salaries — Including salary of $15,000 per annum for the Governor
* * * * * *
“Total: of- Item No. 22..
$127,340.00”
Section 30 of Article III of the State Constitution is a positive limitation upon the .power of the Legislature when it provides:
“Laws making appropriations for the salaries of public officers and other current expérises of the State shall contain provisions on no other.subject.” (Emphasis supplied.)
' This section müst be read in connection with Section 16 of Article III of the State Constitution, which reads as follows:
■ '“Each law enacted in the Legislature • shall embrace but orie subject and matter ■ properly connected' therewith, which subject shall bé briefly expressed in the title, and no law shall be amended - or revised (by reference) to its title only;' but in such case the act as rcvis-ed on section, or subsection of a section, or paragraph-of a subsection of a section, as amended, shall be reenacted and published at length.” As amended, election No. 7, 1950. (Emphasis' supplied.)
This court has established in no uncertain terms the meaning, purpose and intent of the people in adopting Section 30 of Article III of the State Constitution with reference to the General' Appropriations Act. Opinion of the Justices, 14 Fla. 283; Opinion of the Justices, 14 Fla. 285; Amos v. Moseley, 74 Fla. 555, 77 So. 619, L.R.A. 1918C, 482; and Lee v, Dowda, 155 Fla. 68, 19 So.2d 570, 571, in which this Court said:
. “It is manifest that the Constitution considered this matter of appropriation laws so important that it required they should be freed from all log rolling, by putting into such bills riders dealing with any .other subject whatsoever, so, that the attention of the Legislature should be concentrated upon the wis- , dom of and the necessity for the several items of appropriations made by and-.enumerated- in the bill, and-so also that . the public could rest assured that when an appropriation bill was up for consideration in the Legislature nothing would be considered but the appropriations, and that this important matter should not be prejudiced by the injection into the .appropriation bill of any other matters, regardless of their inherent merits or .demerits.” (Emphasis. supplied.)
In the case of Lee v. Dowda, supra, this Court quoted from Opinion of the Justices, 14 Fla. 285, as follows:
“* * * Here we have a general' provision denouncing the union in one law of two distinct subjects, and limiting the exercise of legislative power in the enactment of a law to the subject expressed in the title. With regard to the subject of appropriations the provi-, sion.is specific, thus showing beyond, question .the intention of the framers of the Constitution to be to confine a law making appropriations for salaries, etc., to-this one subject. And they were not content to leave the matter where it was placed 'by' the general provision above mentioned. Laws making appro■priations for the purposes mentioned shall contain provisions on no other subject. This is explicit. In the enforcement or construction of such law, the court cannot regard a provision embracing any other subject, for to do this they would themselves be disregarding their duty and become parties to a violation of the Constitution. And it matters not whether the subject of appropriations be the one embraced in the title or not. In discharging their duty a court must give effect only to the subject of appropriations, if that be the one embraced in the title, or if it is not, then it cannot give it operation, for in either case its joinder with another subject would be a violation of the Consti *489 tution. * * * ” (Emphasis supplied.)
Section 30 of Article III of the State Constitution is more explicit and restraining about the general appropriation act than Section 16 of Article III with reference to titles and acts generally. .
The subject of fixing or increasing the salary of a constitutional officer is different from the subject of appropriations. The Court must give effect only to the subject of appropriations, for its “joinder with another subject (fixing or increasing salaries) would be a violation of the Constitution.”
Section 29 of Article IV of the State Constitution fixed the salary of the Governor at $3,500 per annum, and made the same a continuing constitutional appropriation. This section then provided “That the Legislature may after eight years from the adoption of this constitution increase or decrease any of all of said salaries.” (Emphasis supplied.) Therefore, under this section the salary of the Governor was fixed at the definite sum of $3,500 per annum for a period of eight years, and eight years after the adoption of the constitution, the Legislature and it alone was given the power to “increase or decrease” the salary.
When the Legislature acted from time to time under the authority granted to it and “increased or decreased” the salary of the Governor, such salary 'became a substitution for the salary of $3,500 per annum, and became a constitutional continuing appropriation for the amount so fixed by the Legislature.
In re Advisory Opinion to the Governor, 114 Fla. 520, 154 So. 154, 156, this Court said:
“The effect of section 3 of article 16 is to make disbursable by way of a constitutional appropriation out of any available moneys in the state treasury in the gene'ral state funds, the amounts of salaries fixed by law for state officers to deceive, which salaries, after being SO’fixed by statute,’ then become payable monthly upon the 'officers’ requisition as provided in section 3 of article 16 of the Constitution of Florida.
“Our opinion is that section 3 of article 16 of the Constitution authorizes you to countersign warrants based upon the requisitions of circuit judges, state attorneys, and official court reporters for their respective salaries for the month of April, 1934, as fixed by chapter 15859, irrespective of what is set forth or cqntained in chapter 15858, Acts of 1933.” (General Appropriation Act.) (Emphasis supplied.)
See also In re Advisory Opinion of the Justices, 145 Fla. 375, 199 So. 350, and State ex rel. Williams v. Lee, 121 Fla. 815, 164 So. 536.
■ The Florida rule is well established in other states of the Union, with Constitutions similar to ours, that when an office is created by the Constitution and a salary is provided for, whether by the Constitution or by an act of the Legislature authorized by the Constitution, the salary so fixed is a continuing constitutional appropriation. In the case of Riley v. Carter, 165 Okl. 262, 25 P.2d 666, 678, 88 A.L.R. 1018, it was held:
“From these two sections it is seen that the Constitution fixes, until changed by the Legislature, the salary of the justices of this court, and provides that they shall receive same. Pursuant to the authority granted by the Constitution, the Legislature changed the salaries of the justices of this court by chapter 273, Sess.Laws 1929, p. 396, fixing the salary at $7,500 per year payable monthly, and in now considering the words in the Constitution we are to read the same as if the salary fixed by the Constitution was the sum of $7,500 per year payable monthly, for the authorized acts of the‘ Legislature as much éxpress the will of the people as their expression as contained in the Constitution.
* * '* * * *
'“ * * * We further hold that, this being an appropriation made by the *490 people in. the Constitution, it constir tutes .a. continuing appropriation, and that the limitation contained in section 55, art. 5, of our Constitution, is not applicable to appropriations made in the Constitution itself." (Emphasis supplied.)
In that case opinions from other courts throughout the United States are cited and quoted from and the annotation in 88 A.L.R. 1054 fully supports the Florida rule as stated in Re Advisory Opinion to the Governor, 114 Fla. 520, 154 So. 154.
The- salary of the governor is set forth in two sections of Florida Statutes, F.S.A. F.S. Section 14.04, F.S.A., states that “The salary of the governor of this state shall be twelve thousand dollars.” The source of authority is then given, as Amended laws 1943, chapter 2Z000, § 7; Laws 1945, chapter 22913, § 1.
F.S. Section 111.01, F.S.A. reads in part as follows:
“Salaries of certain state administrative officers
“(1) Beginning July 1, 1945, the annual salaries of the governor and cabinet officers shall be the amount set opposite the title of such -officers, to wit:
“Governor . $12,000.00
* * * * * *
“(3) All of the salaries provided for in this section, shall be paid in equal monthly installments on warrants to be issued by the comptroller.”
Section 29 of Article IV of the State Constitution provides for an “increase or decrease” in the salary of the governor. The two sections above mentioned, that is, F.S. §§ 14.04 and 111.01 F.S.A., were enacted by the Legislature and increased the salary of the Governor pursuant to said Section 29 of Article IV. It is therefore, obvious that construing Section 29 of Article IV of the State Constitution in connection with F.S. Sections 14.04 and 111.01 F.S.A., the Legislature raised the salary of the Governor and fixed it at $12,000 per annum which is a continuing constitutional appropriation.
• In 1890 this Court in an opinion in the case of State ex rel. Mitchell v. Bloxham, 26 Fla. 407, 7 So. 873, held that where the constitution prescribes the salary of an officer, and the Legislature enacts a law appropriating an amount large enough to permit his being paid more, the statute is not legal authority for paying more than the salary prescribed by the Constitution.
The above principle was re-affirmed in two advisory opinions to the Governor. One is Advisory Opinion to the Governor, 1934, 114 Fla. 520, 154 So. 154, which related to the salaries of Circuit Judges. This opinion was written by the late Chief Justice Davis and was concurred in by Justices Whitfield, Terrell, Brown and Buford.
The other was Advisory Opinion of the Justices, 1940, 145 Fla. 375, 199 So. 350, and related to the salary of a Justice of the Supreme Court. This opinion was written by Mr. Justice Terrell and concurred in by Justices Whitfield, Brown, Buford, Chap,man and Thomas.
In the first opinion relating to the salaries of Circuit Judges, the General Appropriation Act did not provide sufficient money to pay the salaries of the Circuit Judges -as fixed by law. After discussing the question at length, the opinion held; (1) that the salaries of Circuit Judges had been fixed by law, and that they were continuing constitutional appropriations, (2) that such payment from the general fund of the salaries so fixed by law would prevail over the amount appropriated in the General Appropriation Act, and (3) that Section 3 of Article XVI authorized the payment of the salaries of these constitutional officers as fixed by law “irrespective of the amount named or specified in the general appropriation act”, and then said:
“Under section 3 of article 16 it is provided that the salary of each officer shall be payable monthly upon his own requisition. Circuit judges and state attorneys are constitutional officers. *491 Section 8 of article 5; section 15, article 5. Court reporters are of statutory creation. Chapter 11976, Acts of 1927, section 4872, C.G.L. The salaries of circuit judges, state attorneys, and of official court reporters have been fixed by law. Chapter 15859, .Acts of 1933.
* * * * * *
“Our opinion is that where an office exists under the law, and an occupant thereof- has been duly appointed and qualified and has performed the duties of the .office for a particular monthly period for which he claims compensation payable under a statute specifically fixing the amount of salary to which such officer shall be entitled to be paid when and after he has performed the constitutional or statutory duties of the office for the period' for which compensation is claimed, that section 3 of article 16 providing that the salary of each officer shall be payable monthly upon his own requisition authorizes the payment of the -salary of ■the officer as fixed by law, irrespective of the amount named or specified in ■ the general appropriation act of the Legislature.” [114 Fla. 520, 154 So. 156.] (Emphasis supplied.)
If the salary of a constitutional officer cannot be “decreased” by the general appropriation act, it" is difficult to understand any process of reasoning by which we can say that such salary can be “increased” by the general appropriation act. The same sentence of Section 29 of Article IV- of-the State Constitution which authorizes-an “increase” in the Governor’s salary also authorizes a “decrease” in such salary.. If the salary, cannot be “decreased” by the general appropriation act, then, certainly, it cannot be “increased.”
In the other -advisory opinion relating to tbe salary of a Justice of the Supreme Court, it was stated [145 Fla. 375, 199 So. 352]:
“ * * * You say that the budget and appropriation for the Supreme Court is not sufficient to pay the salary of Honorable Alto Adams or his secretary, no such accounts having been in contemplation when the General Appropriation Bill was passed.
* * . * ' * 1 '* *
“You are advised that Chapter 19262, Acts of 1939, fixes the salary of Justices of the Supreme Court at $7,-500 per year and makes a continuing appropriation from ’ any funds in the State Treasury not otherwise appropriated, for their payment. The salary. of Honorable Alto Adams should .be paid under authority of this act and you would be authorized to countersign any warrant for that purpose.” (Emphasis supplied.)
It is insisted that the two advisory opinions to the Governor, are nothing more than the private opinion of each Justice to the Governor and are not binding upon any one. The Advisory Opinion to the Governor in 114 Fla. 520, 154 So. 154, with reference to constitutional officers has been made more than a mere advisory opinion amounting to nothing except for its persuasive character by the -later case of State ex rel. Williams v. Lee, 1935, 121 Fla. 815, 164 So. 536, in an opinion by Mr. Justice Buford, concurred in by Justices Ellis, Terrell, Whitfield, Brown and Davis. The Advisory Opinion above mentioned was made á part of the opinion, which' was an adversary proceeding. After stating the facts to be that the relator, John W. Williams, claimed $300 per month as the salary fixed by law, and that the Appropriation Bill had not provided sufficient money to pay his ■ salary in full, the Advisory Opinion to the Governor, 114 Fla. 520, 154 So. 154, was quoted in full by the Court and then was adopted, ratified and approved in the following language:
“While advisory opinions do not necessarily control in litigated cases, they have a persuasive value, and w;e think the rule as stated in that opinion .is applicable to the case at bar, * * *.” [121 Fla. 815, 164 So. 538.]
*492 We thus have a unanimous opinion in a case adopting the language of an Advisory-Opinion as being the controlling law in this State.
We should bear in mind that there is a vast difference between fixing, or increasing the salary of a constitutional officer and appropriating money to pay the salary so fixed or as increased. This distinction was recognized in the ca.se of State ex rel. Hudson v. Carter, 167 Okl. 32, 27 P.2d 617, 621, 91 A.L.R. 1497, wherein the Supreme Court of Oklahoma held:
“ * * * no appropriation shall be made in the general appropriation bill for any officer or employee, regular or special, of the executive, legislative, or judicial departments of the state, unless provision shall have been made for such employment and the amount of salary therefor fixed, by lava, prior to the enactment of the general appropriation bill, * ' * (Emphasis supplied.)
We need not go outside the provisions of the Constitution of the State of Florida, the statutes duly enacted pursuant thereto and the opinions of this Court for a correct answer to the question under consideration.
However, the case of Hailey v. Huston, 25 Idaho 165, 136 P. 212, 214, so thoroughly covers every question with reference to this matter, we quote at length from that opinion:
“Section 15 of article 3 of the Constitution provides, among other things, that no law shall be passed except by bill. Section 16 provides that every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; and section 18 provides that no act shall be revised or amended by mere reference to its title, but the section as amended shall be set forth and published at full length. The subject of the increase of any salary is not expressed in the title of the appropriation act, and, as that subj ect is not expressed in'the title of the act, an increase , of salary cannot be included in such act.' And if it were included in the title to said act, the act would be obnoxious to the Constitution under another provision of section 16, which declares that every act shall embrace but one subject and matters properly connected therewith. A general appropriation act includes one subject, and an increase in the salary of an officer is another and distinct subject, and, being two separate and distinct subjects, they are prohibited from being combined in one act by the provisions of said section. Under the provisions of said section 18, when a section of the statute is amended, it must be set forth and published at length, and, as the said salary statute (section 851, Rev.Codes) was not set forth ' and published at full length, it was not amended by said general appropriation act. Here we have a specific statute fixing said salary, and it was Hot contemplated by the frontiers of the Constitution that such a statute should be amended in any other manner than by specific enactment as provided by the Constitution. It certainly was not contemplated that an amendment to a salary statute could be tucked away in a general appropriation bill, and no reference made to it in the title of the bill. The .title to said appropriation bill would not give to any member of the Legislature or to any other person any inkling of a purpose to increase a salary. That section of the Constitution which provides that every act shall embrace but one subject and matters properly connected therewith, and that such subject shall be expressed in the -title, was for the purpose of giving the members of the Legislature, as well as citizens generally, notice of the purpose and object of the bill, and provides for titles to all bills, as well as for a unity of title and subject-matter. Said appropriation in the general appropriation bill would not and could not amend the statute fixing the salary of the officer referred to.
*493 “By making said appropriation, the Legislature evidently desired to increase the salary of said officer,- and this court is of the opinion that said desire was a laudable one, and recognizes that under present conditions it would be only fair and right to increase the salary of said officer to the full amount of said appropriation intended for such purpose; but the court cannot disregard the provisions of the Constitution in regard to the enactment and amendment of laws, and is com-' pelled to hold that the appropriation ■' made by the. Legislature for said office does not increase the salary of said officer nor suspend or amend the provisions of said section-851, Rev.Codes, as amended, fixing said salary.’1 (Emphasis supplied.)
See also annotations in 16 L.R.A.,N.S., 631; 27 L.R.A.,N.S., 537; 49 L.R.A.,N.S., 67; and 164 A.L.R. 928.
The cases of State ex rel. Williams v. Lee, 140 Fla. 380, 191 So. 697, and State ex rel. Knott v. Lee, 144 Fla. 164, 197 So. 681, are cited as authority and precedent for the contention that the salary of the Governor, a constitutional officer, may be increased in the general appropriation act. We will hereafter refer to -these cases as the “Williams case” and the “Knott case”. The facts with reference to each of these cases are entirely different from the facts in the case now before us. In the Williams case the Justices pointed out -that Williams was an employee. In the Knott case, Mr. Knott was a constitutional officer. Otherwise, the cases were similar.
In the Williams case and the Knott case the opinions cited Section 11(a) of the General Appropriation 'Act of 1939, same being Chapter 19280, as the predominant reason for holding that the amount named in the appropriation act prevailed over the statute. The Court said [140 Fla. 380, 191 So. 698]:
“Section 11(a) of the General Appropriation Bill of 1939 (Chapter 19280, Acts of 1939) is as follows:' ‘Where the salary of any officer or employee of the State has not been changed by any Act out of the . Legislature of 1939, the appropriation for salaries respecting such officer or employee shall control the salary of compensation to be paid such officer or employee.’
“This provision evidences'a'clear intent on the part of the Legislature to pay all officers ■ of employees of the State government during the biennium beginning July 1, 1939, such amounts for salary as is carried.for them in the .General Appropriation Bill regardless of any other.act fixing their compensation. ; : ,
' “In' view of the foregoing provision, any act- fixing the compensation of State officers" and employees, including Relator, different from the amount shown to have been provided for them by Chapter 19280, Acts of 1939, is suspended during the life of the latter act. * * * ” (Emphasis supplied.)
There is no such provision in the Appropriation Act of 1953 as Section 11(a) of the Appropriation Act of 1939.
In the Williams and Knott cases, in addition to citing Section 11(a) of the Appropriation Act of 1939 as the predominant reason for the holding in those cases, some importance was placed upon the fact that the Budget Commission- had recommended the ■ increase in salary for Mr. Knott and the. Appropriation■ Act was in effect the adoption of the- recommendation of the Budget Commission. The budget submitted •to the Legislature by the Commission is nothing more than a recommendation and at every session the members of the Legislature engaged in the pleasant pastime of seeing how many recommendations they will refuse to adopt. Experience has shown that the Legislature jealous of the authority vested in it and fully recognizes that the ultimate power and authority to fix salaries for constitutional officers and appropriate the money necessary to pay such salaries is vested in the Legislature and it alone. This power cannot be delegated. It would be a plain violation of the Constitution for *494 the Legislature to delegate to a board, composed of constitutional officers, the power to fix their own salaries.
In the Knott case the Court said [144 Fla. 164, 197 So. 681]:
“The question here turns on the interpretation of the recommendation of the Budget Commission for the 1939-1940 biennium as affected by that part of Section 11(a) of Chapter 19280, Acts of 1939, as follows:
“ * * Where the salary of any officer or employee of the State has not been changed by any Act out of the Legislature of 1939, the appropriation for salaries respecting such officer- or employee shall control the salary or compensation to be paid such officer or employee.’
******
“The Appropriations Committee accepted the recommendation of the Budget Commission- and placed the full -amount recommended by the latter in the General Appropriation Bill, Chapter 19280, Acts of 1939, to operate the expenses of the State Treasury. The bill was passed carrying this, amount. A bill was also introduced fixing the State. Treasurer’s salary at $6,000 per year, but realizing that it would likely not be reached for consideration, during the closing hours of the session as' shown by the journals the provision -from'Section 11(a) as. here quoted was added as an amendment to the General Appropriation Bill. Every member of the legislature was advised of the amendment and voted for or against the bill with that knowledge.
“ * * * The Budget Commission recommended the raise, the legislature approved and put it in the appropriation bill, and Section 11(a) allocated it to the State Treasurer as his yearly salary.”
At the last session of the Legislature the Budget Commission did not recommend any increase in the salary of the Govern- or. In the Report to the Legislature of the Budget Commission of the State of Florida for the Biennium, July 1, 1953 to June 30, 1955, page 38, we find the following:
“Detail of Salaries
Position First Year
Governor $12,000.00”
.The facts in the Williams case and the Knott case are entirely different from facts in the present situation, and would not for that reason be stare decisis as to this matter.
It is suggested that Section 4(5) of 'Chapter 28231, Acts of 1953, is authority that the amount appropriated in the General Appropriation Act shall control over specific statutes fixing the salary of the Governor, a Constitutional officer. This Section 4(5) reads as follows:
“Where a sum is mentioned in the general appropriations act for the salary of a state officer or employee such amount shall control over prior statutes fixing such salary except those enacted -at the same session of the legislature as the appropriations act.”
Chapter 28231, Acts of 1953, has absolutely nothing to- do with the fixing or prescribing of salaries or appropriating money with which to pay the salary of the Governor, a constitutional officer. The title of that Act is with reference to' the disposition of funds received as fees, tui-tions and other charges by institutions under the management of thé State Board of Control and certain regulatory boards, but contains no reference whatsoever to fixing the salaries of the Governor or to making any provision that appropriations for salaries in the appropriation act should prevail over the salaries of constitutional officers as fixed by the Legislature.
Where an Act is susceptible of two interpretations, one of which is constitutional and the other is unconstitutional, it is the- duty of the Court' to adopt that construction which will preserve the constitutionality of the act. The law with reference to the question of a constitutional 'of *495 ficer appears to be firmly established in •this state. When the salary of a constitutional officer has been increased or decreased or fixed in the manner and method provided for in the Constitution, and the General Appropriation Act carries a salary different from that fixed by a law enacted for the purpose of fixing such salary, the amount named in the law fixing the salary shall prevail over the amount named in the Appropriation Act. This was the law established in the cases of State ex rel. Mitchell v. Bloxham, 26 Fla. 407, 7 So. 873; Opinion of the Justices, 114 Fla. 520, 154 So. 154; Advisory Opinion of the Justices, 145 Fla. 375, 199 So. 350; State ex rel. Williams v. Lee, 121 Fla. 815, 164 So. 536. This law was also approved and re-affirmed in an opinion by Mr. Justice Terrell in the case of State ex rel. Williams v. Lee, 140 Fla. 380, 191 So. 697, 698, when it said:
“This Court has held that where a State officer’s salary is fixed by statute, he is entitled to payment therefor on his own requisition to the extent of the salary fixed by law irrespective of the amount specified therefor in the General Appropriation Act of the Legislature. In re Advisory Opinion to Governor Sholtz, 114 Fla. 520, 154 So. 154; see, also, In re Advisory Opinion to the Governor, 74 Fla. 250, 77 So. 102.”
After having re-affirmed the law, the opinion then gave as a reason for upholding the salary of Williams, an employee, appropriated in the General Appropriation Act, the provision that where the salary had not been changed by any act of the Legislature, the “Appropriation 'for sal-, aries respecting such officer or employee shall control the salary or compensation to be paid such officer or employee.”
As heretofore stated, in the Knott case the Court did not mention or overrule any of its previous decisions but again gave as a reason for upholding the General Appropriation Bill the proviso contained therein: “Where the salary of any officer or employee of the State has not been changed by any Act out of the Legislature, of 1939, the appropriation for salaries respecting such officer or employee shall control the salary or compensation to be paid such officer or employee.”
It, therefore, appears that whether or not a constitutional officer is entitled to the amount named in the appropriation act, which is different from the amount named in a law enacted for the purpose of fixing a salary, would depend upon some further action by the Legislature, either by amending the law fixing the salary or by some section being included as that cited in the Williams and Knott cases.
Until the Williams and Knott cases this Court was committed to the doctrine that where the salary of a constitutional officer was fixed by the Constitution and the Legislature was authorized to increase or decrease such salary, when the Legislature changed the amount from that fixed in the Constitution, the new amount named and fixed became a substituted constitutional salary and was a continuing constitutional appropriation for the amount named. It was further committed to the doctrine that if the sum named in the appropriation act was different from that named in the law fixing a salary of a constitutional officer, the amount named in the Act fixing salaries would prevail irrespective of the amount named in the .appropriation act. Such was the unanimous holding in Advisory Opinion to the Governor, 114 Fla. 520, 154 So. 154; In re Advisory Opinion of the Justices, 145 Fla. 375, 199 So. 350; State ex rel. Williams v. Lee, 121 Fla. 815, 164 So. 536, and these cases were before the Legislature when it enacted the Appropriation Act of 1939. In construing that Appropriation Act the opinion made an exception to the rule which existed prior to the addition of Section 11(a). Whether right or wrong, the Court decided in the Williams and Knott cases that the Legislature in the appropriation act could change the salary of a constitutional officer as fixed by law, provided it did something further and that was to provide that where there was a difference in the salary fixed by some other law and the Appropriation Act that the amount named in the Appropriation Act should prevail.
*496 It is urged that Section 11(a) was not necessary and meant nothing. This can hardly be true because when the Appropriation Act contained no provision similar to Section 11(a), this Court repeatedly held that the amount of salary named in a salary law would prevail over the amount named in the general appropriation act. It was to get around such holding by this Court that Section 11(a) was inserted and some such provision has been in every appropriation act since 1939 through 1951. There is no such provision in the Appropriation Act of 1953.
■ The unanimous holding of this Court has been that all provisions of an Act by the Legislature are presumed to have some useful purpose. ■ There is no presumption that the Legislature inserts a clause or paragraph in an Act which is useless. Stein v. Biscayne Kennel Club, 145 Fla. 306, 199 So. 364; Amos v. Mathews, 99 Fla. 1, 126 So. 308; Girard Trust Co. v. Tampashores Development Co., 95 Fla. 1010, 117 So. 786; Alexander v. Booth, Fla., 56 So.2d 716; 50 Am.Jur. 361, Statutes, Secs. 358, 359. The opinions in the Williams and Knott cases gave to Section 11(a) a certain and definite meaning and purpose.
There is nothing in Section 1, Item 22 of the Appropriation Act of 1953 to indi-, cate or suggest that the purpose was to do anything more than make appropriations. There is no clause or paragraph in the General Appropriation Act of 1953 which provides that where the salary of any officer has not been changed by any Act out of the Legislature of 1953 the appropriation for salaries respecting such officer shall control the salary or compensation of such officer.
Subsection (1) of Section 10 of the Act (Appropriation Act of 1953) provides that any unexpended balance not dispensed in the appropriation or appropriated for administrative and other expenses, shall automatically revert to the fund from which appropriated and shall be available for re-appropriation. .
Section 12 of the Act reads in part as follows:
“Section 12. All appropriations provided for by this Act are maximum appropriations, * *
Section 18 of the Act reads in part as follows:
“Section 18. Any sum or sums appropriated for salaries, if not required for such purposes, may be applied to expenses of the department' to which they are appropriated by approval of the Budget Commission, * *
It is clear that the maximum appropriation of $15,000 per year is a maximum appropriation which, if required, can be paid from the appropriation bill for the salary of the Governor. Even had F.S. Section 111.01, F.S.A. been amended to increase thé salary of the Governor to $25,-000, only $15,000 could have been paid from the appropriation bill and the balance of $10,000 should have been paid from the General Fund as a constitutional continuing appropriation as was done with reference to Circuit Judges. In re Advisory Opinion to the Governor, 114 Fla. 520, 154 So. 154. On the other hand, had there been only $6,000 appropriated for the Governor in the appropriation bill, such would not have amended F.S. Section 111.01, F. S.A., or decreased the salary of the Governor. There would have been a deficit of $9,000 to be paid as a “constitutional continuing appropriation” from the General Revenue Fund, in order to pay a legal salary of $15,000..
The net result is that the appropriation for salary of the Governor is a maximum appropriation and the maximum cannot be paid unless the salary of the Governor is “increased” in some manner and method by the Legislature to that maximum. This was not done and the salary remains at $12,000 per annum. We therefore have an excess appropriation for salary of the office of Governor of $3,000 per annum which is not required for the purpose of paying, such salary of $12,000, and such $3,000 should be disposed of as provided for in Section 10 or Section 18 of the Act.
This construction is consistent with the Constitution and the excess appropriation *497 cannot and does not authorize the Comptroller to draw his warrant, or the Govern- or to countersign such warrant, or the Treasurer to pay a warrant for such excess appropriation for salary of the Governor when the appropriation is more than is necessary to pay the salary as fixed by law.
Emoluments include salary. Section 29, Article IV of the State Constitution fixes the salary at $3,500 per annum, and vests in the Legislature the power to increase the salary without limit as to amount or time except as to future action by the Legislature. Salary is compensation incident to the office. The Governor is pro-/ hibited by this section from receiving any' additional compensation beyond his salary for any services rendered or to be rendered in connection with the interest of the State.
Section 5 of Article III prohibits a member of the Legislature being appointed or elected to any civil office that has been created or the emoluments whereof shall have been increased during the time he was elected to the Legislature. It makes no difference whether the emolument, the salary, or compensation is increased $10 or $10,000, or that there is no “personal” or “self interest” — the Constitution places no limitation except an increase in emoluments.
There is no guarantee that any law is a fixed or permanent law so long as it may ■be amended, modified, changed or repealed every two years.
The Constitution makes no distinctions as to the time the increase in salary must remain in order to make ineligible the election of a member of the Legislature except it must be effective for a portion of the time during his term as a member of the Legislature for the other office to which he is appointed or elected.
To say that the emoluments of the office of Governor have not been increased within the spirit and intent of Section 5 of Article III of the State Constitution but -has been increased for all other purposes, is to do violence to the English language and in effect repeal the plain and unambiguous language contained in the Constitution. When applied to a candidate for Governor, it is not an increase, but when applied to some one else, it will buy grits and bacon.
It should, therefore, be held that (1) even if the salary of the Governor had been increased to $15,000 per year, the action of the Budget Commission in passing the Resolution, dated January 5, 1954, is an absolute nullity and did not reduce or change the salary of the office of Govern- or, (2) that Section 5, Article: III of., the State Constitution as construed by this Court .in the case of State ex rel. Fraser v. Gay, supra, is controlling in this case, and. that the so-called Gomez Clause has no effect upon the eligibility of the respondent to be elected Governor of the State of Florida, and to hold that such clause is effective would circumvent Section 5, Article III of the State Constitution, and make “its practical purpose nullified”, and (3) that the salary of the office of Govern- or was increased and fixed by the Legislature of the State of Florida as authorized by Section 29, Article IV of the State Constitution, by F.S. Section 111.01, F.S. A., at $12,000 per annum, and such salary was not increased by the Legislature by the enactment of the General Appropriation Act of 1953, and such salary remains fixed and established at $12,000 per annum.
For the reasons' stated the alternative writ should be quashed and the cause dismissed.