**THE STATE OF FLORIDA, ex rel., EDWIN G. FRASER, v. CLARENCE M. GAY.**

28 So. (2nd) 901                    January Term, 1947
January 31, 1947                              En Banc

R. H. *Anderson, Pat Whitaker, J. Lewis Hall* and *Tyrus A. Norwood*, for relator.

*Julius F. Parker, Leo L. Foster, John T. Wigginton, Robert J. Pleus, John G. Baker* and *Maxwell W. Wells*, for respondent.

TERRELL, J.:

J. M. Lee, Comptroller of the State of Florida, died October 6, 1946, more than two years before the term for which he was last elected expired. The Governor appointed Clar-

ence M. Gay for the unexpired term. The State Democratic Executive Committee feeling that a successor to Mr. Lee should be elected at the November election in 1946 nominated Edwin G. Fraser for the position. Fraser's name was placed on the ballot and received a majority of all the votes cast for the office of Comptroller but the Governor declined to recognize the validity of his election and denied him a commission, relying on Section 5, Article III of the Constitution.

Fraser filed his oath of office with the Secretary of State and posted the required bond. On January 7, 1947, he made demand on Gay to vacate and turn the office over to him but Gay denied his request. Fraser promptly filed his petition in this Court and we issued a writ of quo warranto directed to Gay, commanding him to show by what authority he performs the duties of the office of Comptroller of the State of Florida. Gay filed his return to the writ in which he details the basis of his claim to the office and alleges that it is superior to the claim of Fraser. Fraser moved for judgment of ouster notwithstanding the return.

The motion for judgment of ouster raises the sole question with which we are confronted—viz.: the validity of Fraser's claim of title to the office. This question is resolved by an interpretation of Section 5 of Article III of the Constitution, as affected by Subsection 4 of Section 1, Chapter 22913 and Section 7 of Chapter 22827, Acts of 1946.

Section 5, Article III of the Constitution is as follows:

"No Senator or member of the House of Representatives shall during the time for which he was elected, be appointed, or elected to any civil office under the Constitution of this State that has been created, or the emoluments whereof shall have been increased during such time."

Subsection 4 of Section I, Chapter 22913, is as follows:

"(4) Any member of the Legislature who may during the time for which he was elected senator or member of the house of representatives, be appointed or elected to a civil office referred to in section 5, article III of the Constitution shall receive during the term for which he was elected or appointed to such civil office the salary or emoluments which under the provisions of law appertain to such office at the

beginning of the time for which he was elected senator or member of the house of representatives."

Section 7, Chapter 22827, the General Appropriation Act, is as follows:

"Section 7. Where the salary of any officer or employee of the State has not been changed by any Act out of the Legislature of 1945, the appropriation for salaries respecting such officer or employee shall control the salary or compensation to be paid such officer or employee.

"Any member of the Legislature who may, during the time for which he was elected Senator or member of the House of Representatives be appointed or elected to any office incident to which the salary or emoluments thereof are increased under the provisions of this Act, shall receive during the term for which he was elected or appointed to such office the salary or emoluments which under the provisions of law appertain to such office at the beginning of the time for which he was elected Senator or Member of the House of Representatives."

It is admitted that Fraser was a member of the Senate in 1945 that enacted Chapter 22913, raising the salary of certain State officers, including that of Comptroller, that he was elected to the Senate at the General Ellection in 1944 and that his term, as Senator does not expire till the General Election in 1948. Because of the prohibition in Section 5, of Article III of the Constitution he is clearly ineligible to hold the office of Comptroller unless the quoted provisions of Chapters 22913 and 22827, remove his disqualification.

Section 5 of Article III of the Constitution in words as clear as can be stated bars any member of the Senate or House of Representatives from election or appointment to certain civil offices during the time for which he was elected to the legislature and the office of Comptroller is, by reason of the salary raise in Chapter 22913 within the forbidden class. The terms of Section 5, Article III are so clear and direct that they defy misinterpretation. Any one who reads English can interpret them. To offer an interpretation other than their clear meaning imports would be a distortion of the English sentence. The test of the validity of the quoted pro-

visions of the acts is whether or not they hamper the operation of the constitutional mandate.

No political policy has been longer or more definitely settled in this country than that promulgated in Section 5, Article III of the Constitution, making members of the legislature ineligible for certain civil offices. Provisions defining such a policy were contained in some of the colonial constitutions—the Constitution of the United States (Sec. 6, Article I) and in all the State Constitutions. The avowed purpose of this policy was to protect members of the legislature as much as the public and the taxpayer.

Commenting on the provision in the Federal Constitution, Mr. Justice Story said that its purpose was "to take away, as far as possible, any improper bias in the vote of the representative, and to secure to the constituents some solemn pledge of his disinterestedness." Story's Commentaries on the Constitution, Sec. 864.

Mr. Madison the greatest interpreter of the Constitution, said that "if you have no exclusive clause, there may be danger of creating offices, or augmenting the stipend of those already created, in order to gratify House members, if they were not excluded. Such an instance has fallen within my observation. I am therefore of the opinion that no office ought to be open to a member which may be created or augmented while he is in the legislature."

George Mason, another member of the Federal constitutional convention put the reason for the provision as one to shut the door against corruption and remove the temptation to multiply offices for members of the legislature to fill. In State ex rel Hawthorne v. Wiseheart, opinion filed October 8, 1946, not yet reported, this Court epitomized the doctrine as one to safeguard the common good and restrain members of the legislature from feather bedding on the public domain. The history of constitution making in Florida and elsewhere amply supports this view.

It therefore necessarily follows that the intent of Section 5, Article III of the Constitution was to preclude members of the legislature from election to or appointment to any civil office that is created or the emoluments thereof increased

during the time for which they are elected. Chapter 22913. raised the salary of the Comptroller from $7500.00 to $9000.00 per year. Subsection 4 of Section 1 of this act attempts to overcome the constitutional prohibition by permitting the raise in salary during the period for which they are elected to the legislature. Section 7 of Chapter 22827 (General Appropriation Bill for all salaries and expenses) is not materially different in result. It limits the salary of State officers to the amount appropriated in the act and then attempts to make members of the legislature eligible to election or appointment to them by remitting the increase in the same manner as Chapter 22913.

We do not hold the challenged provisions of Chapters 22827 and 22913 to be bad ab initio. A set of circumstances might arise in which they could be upheld, but we find no reasonable basis to uphold either of them against the attack in this case. The relator was a member of the Senate that raised the Comptroller's salary, his term does not expire till November 1948, so he is clearly within the class declared to be ineligible for election or appointment to another civil office by resigning from the legislature. If this be true certainly it cannot avoid the constitutional prohibition by remitting the raise in salary for the period of this election to the legislature. A more conclusive reason is that if the assaulted provisions of the two acts are permitted to stand, Section 5 of Article III is circumvented and its practical purpose nullified.

This holding necessarily precipitates the question of whether or not the intent of the legislature in enacting Chapters 22827 and 22913 was such that the invalid portions may be eliminated and the balance of the acts permitted to stand. We understand the rule to be that if the part held to be invalid is so related to the act as a whole that it cannot be severed without producing results not intended by the legislature, then the entire act must fail. Chapter 22827 in terms provides for the severance of any portion found to be invalid. Chapter 22913 does not contain a severable provision but the invalid part is not so interdependent or interrelated to the balance of the act as to be inseparable from it. Strik-

ing down the invalid portion does not broaden the scope of either act and violates no rule as to legislative intent that a court may not limit when the provision stricken down is so patently invalid. See 11 American Jurisprudence, Sections 152, 155 and 161, where the rule for severing invalid portions of legislative acts is fully discussed and cases from many jurisdictions, including Florida, are cited.

Under our form of constitutional government sovereignty resides in the people who may impose any limitation on the executive, the legislature or the judiciary they see fit. Section 5 of Article III is a limitation on members of the legislature to hold other civil offices and should be construed to prohibit the evil it was designed to reach. True such provisions should be strictly construed to uphold the eligibility of the officer if it can be reasonably done. In State ex rel. Hawthorne v. Wiseheart, we applied this rule in holding that the question of a legislator's disqualification must be raised during the period for which he was elected to the legislature, because the constitution disqualifies him for that period and no longer. Here the question is raised during the period of Fraser"s term as a Senator and to hold him eligible would be to uphold and make possible the very thing the constitution was designed to prevent. In this holding there is no imputation whatever of bad faith on the part of any member of the legislature. So far as we know there has been no attempt to abuse this provision of the Constitution but the people have not seen fit to set it aside and while it remains a part of the organic law it must be upheld.

It is also contended by relator that Section 5 of Article III of the Constitution applies only to officers elected by the legislature and that it was not intended to apply to officers elected by the people. It is quite true that at the time this provision of the constitution was adopted many officers were appointed by the Governor and elected by the legislature that are now elected by the people. An examination of the proceedings of the Federal and State Constitutional Conventions show however that Section 5, Article III and similar provisions of other constitutions contemplated and included officers appointed by the Governor as well as those elected by

472

the people. The debates and other proceedings of the conventions and the cases litigated affecting it, settle this point beyond question.

Our political history is replete with evidence showing the wisdom of Section 5, Article III of the Constitution. The motion for judgment of ouster notwithstanding the return must be and is hereby denied and the writ of quo warranto dismissed.

It is so ordered.

THOMAS, C. J., BUFORD, CHAPMAN, ADAMS and BARNS, JJ., and FABISINSKI, Associate Justice, concur.