ROBERT C. ZIMMERMAN Secretary of State
Section 152 of ch. 90, Laws of 1973, established a new compensation plan consisting of ten executive salary groups. Such section effectuates increased salaries for various elective and appointive state offices. Several members of the legislature have announced or are contemplating announcing their candidacy for various state offices. Additionally, members of the legislature may be considered for appointment to state offices created during the current legislative session. You, therefore, request my opinion "as to whether Art. IV, sec. 12 of the Wisconsin Constitution, precludes legislators from being elected or appointed to any of these offices or positions."
Article IV, sec. 12, Wis. Const., reads:
 "No member of the legislature shall, during the term for which he was elected, be appointed or elected to any civil office in the state, which shall have been created, or the emoluments of which have been increased, during the term for which he was elected."
Chapter 90, sec. 152, Laws of 1973, raises the emoluments of constitutional officers and other elected state officials "effective immediately . . . subject to the provisions of ArticleIV, Section 26 of the Wisconsin Constitution." Article IV, sec.26, Wis. Const., generally prohibits increase in the compensation of any public officer during his term of office.
"CIVIL OFFICE" DISCUSSED
The prohibition of Art. IV, sec. 12, Wis. Const., extends to election or appointment "to any civil office in the state." "Office" is defined in Martin v. Smith (1941), 239 Wis. 314, 332,1 N.W.2d 163, as follows:
 "`to constitute a position of public employment a public office of a civil nature, it must be created by the constitution or *Page 129 
through legislative act; must possess a delegation of a portion of the sovereign power of government to be exercised for the benefit of the public; must have some permanency and continuity, and not be only temporary or occasional; and its powers and duties must be derived from legislative authority and be performed independently and without the control of a superior power, other than the law, except in case of inferior officers specifically placed under the control of a superior officer or body, and be entered upon by taking an oath and giving an official bond, and be held by virtue of a commission or other written authority.'"
In addition, civil is distinguished from military. See Webster's Seventh New Collegiate Dictionary at p. 152 and the distinctions evident in Art. V, sec. 4, Art. XIV, sec. 5, and Art. X, sec. 13, Wis. Const.
 OFFICE TO WHICH THE CONSTITUTIONAL PROHIBITION APPLIES
Offices created by the Constitution and having salaries initially specified therein and changeable only by amendment are not within the prohibition of Art. IV, sec. 12. See State ex rel.Zimmerman v. Dammann (1930), 201 Wis. 84, 228 N.W. 593, wherein the court held that Art. IV, sec. 12 did not prohibit a member of the legislature that increased legislative salaries from being a candidate to succeed himself, the rationale being that the framers of the Constitution could not congruently have intended the provision to apply to offices, the emoluments of which were not determinable by the legislature. And this is so, even though, by subsequent constitutional amendment, the emoluments for such offices are made determinable by the legislature.
32 OAG 378 (1943) opined, on the basis of the rationale inZimmerman, that Art. IV, sec. 12, Wis. Const., did not prohibit a legislator from running for Governor even though the Governor's salary was raised during such legislator's term of office.
I concur in this opinion and am of the view additionally that the courts would follow the rationale of Zimmerman and hold that sec. 12 does not apply to those offices that were both created by and had their compensation fixed by the Constitution at the time of adoption. *Page 130 
I conclude, therefore, that the offices of legislator, Governor and Lieutenant Governor are, under the rationale of Zimmerman, excluded from the prohibition of Art. IV, sec. 12, Wis. Const. In the original Constitution, the compensation of the Secretary of State, Treasurer and Attorney General was left for determination by statute, Art. VI, sec. 3, Wis. Const. (1848). Judges' salaries were controlled only as to minimum, Art. VII, sec. 10, Wis. Const. (1848), in contrast to the State Superintendent of Public Instruction whose maximum compensation was controlled. Art. X, sec. 1, Wis. Const. (1848) . Since the compensation of judges and the Superintendent of Schools was to be set by the legislature within the constitutional limitations, I do not deem these positions to be excluded from Art. IV, sec. 12, Wis. Const.
In summary, without attempting to enumerate all the offices to which this constitutional prohibition may apply, it appears that it is clearly applicable to the following offices: Secretary of State; Treasurer; Attorney General; Superintendent of Public Instruction; and judges.
"EMOLUMENT" DEFINED
The term "emoluments" as used in Art. IV, sec. 12, Wis. Const., requires slight definition. "Emolument" is defined by Webster's Third New International Dictionary at p. 742 as:
 "1: profit or perquisites from office, employment, or labor: FEES, SALARY, . . . COMPENSATION . . ."
The meaning of "emolument" is more comprehensive than salary and includes gain, profit and compensation. Dugger v. Board ofSupervisors of Panola County (1925), 104 S. 459, 461,139 Miss. 552.
"ELECTED" DEFINED
Another issue to be considered in construing Art. IV, sec. 12, Wis. Const., is whether the prohibition disqualifies a legislator from running for a prohibited civil office during his term or merely from qualifying for the office during his term. In other words, is the constitutional prohibition inapplicable to a legislator whose term would expire before he or she would assume the new office?
In Zimmerman, supra, at pp. 92-93, the court stated: *Page 131 
 "It is considered that sec. 12 does not, when properly construed, prevent a member of the legislature who votes for the increase of legislative salaries from being a candidate to succeed himself. The conclusion at which we have arrived finds further support in a general principle of law that eligibility for office is to be determined as of the time the person assumes the duties of the office, and that a person who by reason of alienage, non-age, or similar reason is not eligible at the time he is voted for, but becomes such before he is required to assume the duties of the office, is properly elected to office. See State ex rel. McKeever v. Cameron, 179 Wis. 405, 192 N.W. 374, and cases there cited."
The argument could be made on the basis of the above language that the court construed the Art. IV, sec. 12 provision to not exclude a legislator from being elected to the office during his term as long as his term runs out before he is required to assume the duties of the new office.
While "eligibility for office" is not synonymous with "shall . . . be . . . elected . . .," I cannot ignore that the Supreme Court was construing the constitutional provision under consideration. I note that Zimmerman, supra, follows the holding in State ex rel. Schuet v. Murray (1871), 28 Wis. 96, 99, 100, wherein the court held the rule of law to be:
 ". . . it is that a person thus disqualified shall not be eligible to hold such office. Such disqualification does not relate to the election to, but to the holding
of, the office . . ."
The court then cautioned:
 "As a matter of course, none of these remarks are intended to apply to a case where a different rule has been enacted by constitutional or statutory provision."
I note that the Wisconsin Supreme Court has not adopted the strictest construction of the prohibition. State ex rel. Ryan v.Boyd (1866), 21 Wis. 210, held that the Art. IV, sec. 12 prohibition did not apply to a legislator elected to the office of county judge before the judges' salaries were increased even though the increase was during his term as member of the legislature. *Page 132 
It is my view that "elected" as used in the portion of Art. IV, sec. 12, Wis. Const., "elected to any civil office in the state, " refers to election day. While the Constitution and statutes both recognized that canvassing and certification of elections take place after election day, such actions are the means of determining who was elected and do not change the date of election, the date the ballots were cast. Article XIV, sec. 11 dealing with the first elections, reads in part:
 ". . . The returns of election for state officer . . . shall be certified and transmitted to the speaker of the assembly . . . and as soon as the legislature shall be organized the speaker of the assembly and the president of the senate shall, in the presence of both houses, examine the returns and declare who are duly elected to fill the several offices hereinbefore mentioned, and give to each of the persons elected a certificate of his election."
Section 5.01 (3), Stats., compels the same conclusion in these words:
 ". . . The person receiving the greatest number of legal votes for the office shall be declared elected, and the canvassers shall so determine and certify."
See also State ex rel. Schuet v. Murray, supra, for the proposition that election refers to the day the ballots are completed by the voters.
The State of Washington held on the basis of a constitutional provision similar to Wisconsin's that a legislator was not eligible for election notwithstanding the fact that her legislative term expired before commencement of her new office.State ex rel. Pennick, et al. v. Hall (1946), 26 Wash. 2d 172,173 P.2d 153. However, in a later case, State ex rel. O'Connellv. Dubuque (1966), 68 Wash. 2d 553, 413 P.2d 972, the court specifically overruled Pennick v. Hall, supra, holding that where the actual salary increase does not take place during the legislator's term, he is eligible to stand for election and serve in office at the higher salary commencing with the expiration of his elected term, since no part of the increase would be earned during his elected term as legislator.
I cannot help note that carrying the dicta above quoted fromZimmerman to its logical extension would entirely vitiate the constitutional provision under consideration. *Page 133 
I conclude, therefore, that the prohibition of Art. IV, sec. 12 is against election or appointment to office, during the legislator's term and that absent sec. 13.04 (1), Wis. Stats., all legislators are precluded from such election or appointment.
CONSTITUTIONALITY OF SEC. 13.04 (1), STATS.
The final issue I shall discuss is the constitutionality of sec. 13.04 (1), Stats., which reads:
 "Any member of the legislature who, during the term for which he was elected, is appointed or elected to any other civil office, the emoluments of which were increased during his term of office as a member of the legislature, shall be eligible to appointment or election to such office but shall be entitled to compensation only at the rate in effect prior to such increase. Any former member of the legislature, who, after expiration of the legislative term for which he was elected, is appointed or elected to any other civil office, shall be entitled to the full statutory compensation and expenses therefor."
Section 13.04 (1), Stats., was apparently created to eliminate one of the evils to which Art. IV, sec. 12 is addressed and to legislatively interpret such section of the Constitution as permitting a legislator to assume another civil position as long as the compensation was limited to "the rate in effect prior to such increase." The Wisconsin Supreme Court has not had occasion to rule on whether sec. 13.04 (1) is in conflict with Art. IV, sec. 12.
In State ex rel. Fraser v. Gay (1947), 28 S. 2d 901,158 Fla. 465, the Florida Supreme Court considered the constitutionality of a similar statute. The Florida constitutional provision and statute in effect at the time were quoted at 28 S. 2d 902 as follows:
 "Section 5, Article III of the Constitution is as follows: `No Senator or member of the House of Representatives shall during the time for which he was elected, be appointed, or elected to any civil office under the Constitution of this State that has been created, or the emoluments, whereof shall have been increased during such time.'
 "Subsection (4) of Section 1, Chapter 22913, is as follows: `(4) Any member of the legislature who may during the time *Page 134 
for which he was elected senator or member of the house of representatives, be appointed or elected to a civil office referred to in section 5, article 3 of the constitution shall receive during the term for which he was elected or appointed to such civil office the salary or emoluments which under the provisions of law appertain to such office at the beginning of the time for which he was elected senator or member of the house of representatives.'"
The Florida court held the statute invalid when applied to a state senator, elected state comptroller during his senatorial term, in that the salary of the office of comptroller was raised during such term. The Florida court stated at p. 902:
 "Section 5 of Article III of the Constitution in words as clear as can be stated bars any member of the Senate or House of Representatives from election or appointment to certain civil offices during the time for which he was elected to the legislature and the office of Comptroller is, by reason of the salary raise in Chapter 22913 within the forbidden class. The terms of Section 5, Article III are so clear and direct that they defy misinterpretation. Any one who reads English can interpret them. To offer an interpretation other than their clear meaning imports would be a distortion of the English sentence. The test of the validity of the quoted provisions of the acts is whether or not they hamper the operation of the constitutional mandate."
And further at p. 903:
 ". . . The relator was a member of the Senate that raised the Comptroller's salary, his term does not expire till November 1948, so he is clearly within the class declared to be ineligible for election or appointment to another civil office by resigning from the legislature. If this be true certainly it cannot avoid the constitutional prohibition by remitting the raise in salary for the period of this election to the legislature. A more conclusive reason is that if the assaulted provisions of the two acts are permitted to stand, Section 5 of Article III is circumvented and its practical purpose nullified." *Page 135 
In a later case, State ex rel. West v. Gray (Fla., 1954), 74 S. 2d 114, the court held, however, that a state senator was eligible for election to the office of Governor even though the salary of the Governor was increased during his legislative term. While there was agreement of a majority of the court as to the result, there was little agreement as to the rationale for the result. The per curiam opinion distinguished State ex rel. Fraserv. Gay, supra, in the following language from p. 119:
 "There is a clear distinction between the facts here present and those in the case of State ex rel. Fraser v. Gay, supra. There, the increase was a statutory increase which, so long as it remained unchanged by another statute, was a fixed and permanent obligation of the state; here, the increase is only a temporary one which, by its very terms, will expire well in advance of what at the time of its enactment was any foreseeable gubernatorial election . . . .
 "For the reasons stated, we are of the opinion that the emoluments of the office of Governor have not been increased by the action of the 1953 session of the Legislature, within the spirit and intent of Section 5, Article III, Constitution of Florida, so that such section does not render Senator Johns ineligible for the office."
While a majority of the members of the West v. Gray court agreed in the result, two advocated receding from Fraser v. Gay, supra, as the reason for their agreement. I am aware of no other state that has in its statutes a provision similar to sec. 13.04 (1), Stats.
In 52 OAG 425, 430, a former Attorney General, when faced with the question of the constitutionality of sec. 13.04 (1), Stats., (then sec. 13.36), stated:
 "It cannot in my judgment be said that sec. 13.36
is clearly irreconcilably in conflict with Art. IV, sec. 12, so as to be beyond a reasonable doubt, which is the test that should be met before concluding that a statute is unconstitutional."
The Utah Supreme Court in Shields v. Toronto (1964),395 P 2d 829 16 Utah 2d 61, was urged to literally interpret a similar constitutional provision to preclude legislators from running for Governor and Secretary of State. The court refused to preclude the *Page 136 
legislators from being candidates on the ground, among others, that no showing of actual impropriety was made and a literal reading of the constitution provision would unnecessarily conflict with the right of citizens to vote for candidates of their choice. The decision reads in part on pp. 831-832:
 "The absence of any improper machinations being practiced here is rendered even plainer by the fact that all that has been done has had full exposure to public view, and that these candidates have had full exposure to the elective process. Months before this suite was filed they had announced their candidacies for office. They had to run before and obtain the approval of the conventions of their respective parties. They were obliged to run in the public primaries against formidable opponents; and must face candidates of the opposing party in the general election. All of this with the public fully aware of all of the circumstances so they are free to approve or disapprove what the candidates have done.
 "So important that it cannot be ignored, but must be considered in the composite picture, is the effect the plaintiffs contended for application of this Constitutional provision would have upon the fundamental rights of citizens and upon the overall functioning of our democratic system of government. The foundation and structure which give it life depend upon participation of the citizenry in all aspects of its operation. On patriotic occasions we hear a great deal of oratory declaiming how precious is the right and how essential is the duty to vote for the candidate of one's choice. The emphasis is placed on the first clause — the right to vote; and the second clause — for the candidate of one's choice, is minimized or forgotten. Lost sight of is the fact that the two rights are correlative, and that to make the first meaningful, the second must also be assured. Furthermore, the natural corollary of the right to vote is the right to seek and to serve in public office. Reflection on the matter will reveal that these rights are of vital importance both to individual citizens and to the public . . . ."
It should be noted that the Utah Court used the right to vote to mitigate against a literal application of the constitutional prohibition. In State ex rel. Frederick v. Zimmerman (1949),254 Wis. 600, 613, *Page 136.1 37 N.W.2d 472, the Wisconsin Court describes the right of sufferage in these words:
 "The right of a qualified elector to cast a ballot for the election of a public officer, which shall be free and equal, is one of the most important of the rights guaranteed to him by the constitution. If citizens are deprived of that right, which lies at the very basis of our democracy, we will soon cease to be a democracy. For that reason no right is more jealously guarded and protected by the departments of government under our constitutions, federal and state, than is the right of suffrage. It is a right which was enjoyed by the people before the adoption of the constitution and is one of the inherent rights which can be surrendered only by the people and subjected to limitation only by the fundamental law. (Cases cited.)
 "While the right of the citizen to vote in elections for public officers is inherent, it is a right nevertheless subject to reasonable regulation by the legislature." (Cases cited.)
It is inescapable that the constitutional provision literally read says: "thou shalt not" and the statutory provision says: "thou mayest, provided . . . ." However, both Art. IV, sec. 12, Wis. Const. and sec. 13.04 (1), Stats., have the same overall objective — that of barring legislators from receiving increased emoluments which such legislators have provided. The constitutional prohibition should be strictly and narrowly construed in favor of eligibility. State ex rel. Zimmerman v.Dammann, supra, p. 92.
While Art. IV, sec. 12, Wis. Const., states a prohibition against election or appointment of a member of the legislature during the term for which he was elected to any civil office, the emoluments which were increased during his term, there is significant rationale which would probably cause our court to hold that what sounds like a very clear prohibition must be read in the light of the evil to be prevented (officers benefiting from self-enacting pay increases) as against the right of the people to select candidates for public office from one of the most appropriate pools of such talent, i.e., the legislature.
I, therefore, conclude, given the strong presumption of constitutionality which attaches to enacted statutes, that sec.13.04 (1), Stats., is constitutional in application and does enable a *Page 136.2 
legislator to assume an elected state office provided he does so at the salary level existing prior to the voted increase. My conclusion is based on the further reasoning that the withholding of the increased compensation and the submission for consideration of the candidate's actions as a legislator to the public at the ballot box after he has participated in (and perhaps voted for) the legislation increasing the emoluments for the office sought is a sufficient handling of the evils which Art. IV, sec. 12, was intended to prevent. It is my belief that the law should be construed in favor of maximizing the right of the public to vote for candidates of its choice, and to give a literal interpretation to this section of the Constitution would appear to unduly infringe on that right.
A legislator may not, however, be appointed to positions which were created or the emoluments of which were increased during his term. Section 13.04 (1), Stats., does not make provision for offices created during the legislative term. Moreover, in either event, the element of the right of the electorate to vote for candidates of their choice and the corresponding liability of the legislator having to face the electorate for approval of the action in raising the emoluments is absent. Absent the necessary catharsis of the vote of the electorate, I deem sec. 13.04 (1), Stats., to be unconstitutional in its application to appointive positions and therefore unavailable to cure the evil which the constitutional provision is designed to prevent.
CONCLUSION
Legislators may be candidates for the position of Governor and Lieutenant Governor, offices whose salaries were initially specified in the Constitution, since such offices are not within the prohibition of Art. IV, sec. 12, Wis. Const. As to the offices of Secretary of State, Treasurer, Attorney General, Superintendent of Schools and the Judiciary, any legislator may be a candidate by virtue of sec. 13.04 (1), Stats. In any event, in all of the above offices, including Governor and Lieutenant Governor, the legislator, if he attains the office, would be limited by sec. 13.04 (1), Stats., to the salary prior to the increase during his term as legislator.
RWW:WMS