Dear Mr. Schultz:
On behalf of the Miami-Dade County Value Adjustment Board, you have asked for my opinion on substantially the following questions:
1. For purposes of section 194.015, Florida Statutes, as amended by section 4, Chapter 2008-197, Laws of Florida, what is the nature and extent of the ownership interest that a person must have to meet the qualification that he or she "own a business occupying commercial space located within the school district?"
2. Assuming that a person satisfies the ownership requirement discussed in Question One, are there any other qualifying requirements?
3. When must a person satisfy the business ownership requirement of section 194.015, Florida Statutes, as amended?
4. Would a person serving as a citizen member of the Value Adjustment Board be precluded from service by their relationship with senior staff employees of the board?
The Miami-Dade County Value Adjustment Board is a quasi-judicial governmental body created pursuant to section 194.015, Florida Statutes. Among other things, the board hears appeals initiated by taxpayers contesting the denial of tax exemptions and/or the valuation of their properties for tax purposes by the Dade County Property Appraiser. The board conducts hearings at which taxpayers and the Property Appraiser testify and present documentary evidence either in opposition to or in support of the tax assessment under appeal.
During the 2008 legislative session, section 194.015, Florida Statutes, was amended to reconfigure the membership of the value adjustment board. As amended, section 4, Chapter 2008-197, Laws of Florida, provides, in part:
"194.015 Value adjustment board. — There is hereby created a value adjustment board for each county, which shall consist of two members of the governing body of the county as elected from the membership of the board of said governing body, one of whom shall be elected chairperson, and one member of the school board as elected from the membership of the school board, and two citizen members, one of whom shall be appointed by the governing body of the county and must own homestead property within the county and one of whom must be appointed by the school board and must own a business occupying commercial space located within the school district. A citizen member may not be a member or an employee of any taxing authority, and may not be a person who represents property owners in any administrative or judicial review of property taxes. The members of the board may be temporarily replaced by other members of the respective boards on appointment by their respective chairpersons. Any three members shall constitute a quorum of the board, except that each quorum must include at least one member of said governing board, at least one member of the school board, and at least one citizen member and no meeting of the board shall take place unless a quorum is present. Members of the board may receive such per diem compensation as is allowed by law for state employees if both bodies elect to allow such compensation. . . ."
With this amendment, the Legislature reduced the number of representatives from the school board to one and added two non-governmental members to the value adjustment board.
Questions One and Two
You have asked this office to identify the nature and extent of the ownership interest that a person must have to qualify as a citizen member who owns a business occupying commercial space located within the school district pursuant to the amendment.
The Legislature has not qualified the phrase "own a business" by providing any direction as to the nature or extent of the ownership interest a person must possess before being appointed to the value adjustment board and neither this office nor the courts are authorized to amplify legislative requirements with their own notions of what might be appropriate.[1] If additional requirements are to be imposed, they should be inserted by the Legislature.[2]
In the absence of statutory definition, words of common usage are construed in their plain and ordinary sense and, if necessary, the plain and ordinary meaning of the word can be ascertained by reference to a dictionary.[3] The word "own" is defined as "[t]o rightfully have or possess as property; to have legal title to[;]"[4] "to have or hold as property: possess[;]"[5] "[s]omething that belongs to one."[6] A "business" has been defined as "a commercial enterprise carried on for profit; a particular occupation or employment habitually engaged in for livelihood or gain[;] . . . [c]ommercial enterprises[.]"[7] Also, a business has been defined as "an occupation, profession, or trade[;] . . . a person, partnership, or corporation engaged in commerce, manufacturing, or a service; profit-seeking enterprise or concern."[8]
Thus, to satisfy the requirements of section 194.015, Florida Statutes, as amended by section 4, Chapter 2008-197, Laws of Florida, a person must own a commercial enterprise, occupation, profession, or trade conducted from a commercial space located within the school district. The statute does not specify that the board member must be the sole owner of the business and this office cannot read any such limitation into section 194.015, Florida Statutes.[9]
However, while the statute does not elaborate on what may constitute "own[ing] a business" within the school district, previously issued Attorney General Opinions and judicial opinions may, by comparison, provide guidance. Attorney General Opinion 99-49 considered whether an officer or director of a not-for-profit corporation would qualify as a person "engaged in business" within the scope of section 163.356(3)(b), Florida Statutes, if the corporation was performing services for compensation within the area of the community redevelopment agency's operation. That statute provides that "engaged in business" as that phrase is used in section 163.356, Florida Statutes, "means owning a business, practicing a profession, or performing a service for compensation, or serving as an officer or director of a corporation or other business entity so engaged[.]"[10] The opinion noted that the right to hold public office is one of the most valuable rights of citizenship and should not be prohibited or curtailed except by plain provision of law.[11] The opinion concluded that while section 163.356
does not specify that maintenance of an office within the agency's area of operation is required, maintenance of such an office by a corporation would constitute evidence of the corporation's presence within the area.
The terms of section 194.015, Florida Statutes, as amended, which require that a board member "own a business" within the school district would appear to be more limiting than the requirements of section 163.356(3)(b), Florida Statutes. However, as the court recognized inIsern v. City of West Miami, [12] the permanent presence of a business could be established by a warehouse or storage facility or other related facility involved in the operation of the business and this form of business ownership would also appear to qualify those seeking appointment under section 194.015, Florida Statutes, for service on a value adjustment board.
In addition to the ownership requirement discussed above, you have asked whether there may be other qualification requirements of these board members.
While the amendment uses the term "citizen members," a review of the legislative history suggests that the Legislature was not imposing a citizenship requirement on value adjustment board members, but distinguishing between governmental and non-governmental representatives. The final bill analysis for CS/HB 909 states that "[t]he bill changes the composition of the value adjustment board from elected officials to private citizens."[13] Thus, it would appear that the Legislature did not intend to impose a citizenship requirement on service on the value adjustment board.[14]
Further, section 194.015, Florida Statutes, as amended, provides that a non-governmental member "may not be a member or an employee of any taxing authority, and may not be a person who represents property owners in any administrative or judicial review of property taxes."
In sum, it is my opinion that a citizen member of a value adjustment board who must "own a business occupying commercial space located within the school district" is required to own a commercial enterprise, occupation, profession, or trade conducted from a commercial space located within the school district. This member of the board would not appear to be subject to a citizenship requirement and cannot be "a member or an employee of any taxing authority, and may not be a person who represents property owners in any administrative or judicial review of property taxes."
Question Three
You ask when a person appointed as a member of a value adjustment board who is subject to the business ownership qualification expressed in the amendment must "own a business occupying commercial space located within the school district."
The general rule in Florida is that where a constitutional or statutory provision establishing the qualifications for a public office expressly or by necessary implication specifies the time when the required eligibility must exist, the candidate must possess the necessary qualifications at that time.[15] If no provision of the Constitution or the statutes specifies the time when the conditions of eligibility must exist, they must exist at the time of the election or appointment of the candidate.[16]
The requirement that a citizen member owns a business occupying commercial space located within the school district is a condition of service and must be met during the entire course of service. The Florida Supreme Court has stated that eligibility to public office is of a continuing nature. The fact that the candidate may have been qualified at the time of election or appointment is not sufficient to entitle the individual to continue to hold office, if during the continuance of the incumbency the person ceases to be qualified and "quo warranto will lie to oust him therefrom."[17]
Therefore, it is my opinion that a person appointed as a member of a value adjustment board who serves as the member who "own[s] a business occupying commercial space located within the school district" must meet the ownership requirement of the statute at the time of his or her appointment to the board.
Question Four
It appears that your fourth question is premised on possible nepotism concerns. Florida's anti-nepotism statute is section 112.3135, Florida Statutes. The statute imposes restrictions on the employment of relatives:
"A public official may not appoint, employ, promote, or advance, or advocate for appointment, employment, promotion, or advancement, in or to a position in the agency in which the official is serving or over which the official exercises jurisdiction or control any individual who is a relative of the public official. An individual may not be appointed, employed, promoted, or advanced in or to a position in an agency if such appointment, employment, promotion, or advancement has been advocated by a public official, serving in or exercising jurisdiction or control over the agency, who is a relative of the individual or if such appointment, employment, promotion, or advancement is made by a collegial body of which a relative of the individual is a member. However, this subsection shall not apply to appointments to boards other than those with land-planning or zoning responsibilities in those municipalities with less than 35,000 population. This subsection does not apply to persons serving in a volunteer capacity who provide emergency medical, firefighting, or police services. Such persons may receive, without losing their volunteer status, reimbursements for the costs of any training they get relating to the provision of volunteer emergency medical, firefighting, or police services and payment for any incidental expenses relating to those services that they provide."[18]
Section 112.3135, Florida Statutes, is contained in Part III, Chapter 112, Florida Statutes, the Code of Ethics for Public Officers and Employees. Interpretation of provisions of code is the exclusive province of the Florida Commission on Ethics and the commission should be consulted for a definitive resolution of your question.[19]
I would also note that local governments may adopt ethics legislation and you may wish to satisfy yourself that nothing in the Miami-Dade County Charter or ordinances would impact these provisions in section 194.015, Florida Statutes, as amended.[20]
Regarding any concerns relating to the common law principles of incompatibility, the Supreme Court of Florida in State ex rel. Claytonv. Board of Regents, [21] considered whether common law principles precluded a governmental body from appointing one of its own members to a position over which it has appointment power. The Court concluded that "conduct involving public officers, such as dual office holding, financial benefit from office, and abuse of public trust, are issues directly addressed by State Constitution, and thus are not governed by common law."
Sincerely,
Bill McCollum Attorney General
BM/tgh
[1] Johnson v. Taggart, 92 So. 2d 606 (Fla. 1957).
[2] Id. at 608. And see Sarasota Herald-Tribune Company v. SarasotaCounty, 632 So. 2d 606, 607 (Fla. 2nd DCA 1993).
[3] Sieniarecki v. State, 756 So. 2d 68 (Fla. 2000); Rollins v.Pizzarelli, 761 So. 2d 294 (Fla. 2000); Green v. State, 604 So. 2d 471
(Fla. 1992).
[4] Black's Law Dictionary p. 1137 (Eighth Edition, 2004).
[5] Webster's New Collegiate Dictionary p. 820 (1975).
[6] The American Heritage Dictionary p. 492 (Office Edition 1987).
[7] Black's Law Dictionary p. 211 (Eighth Edition, 2004).
[8] Webster's New Universal Unabridged Dictionary p. 283 (2003).
[9] See Ops. Att'y Gen. Fla. 06-26 (2006), and 81-10 (1981). Cf.Johnson v. Taggart, 92 So. 2d 606 (Fla. 1957), Chaffee v. Miami TransferCompany, Inc., 288 So. 2d 209 (Fla. 1974), Sarasota Herald-Tribune Co.v. Sarasota County, 632 So. 2d 606, (Fla. 2nd DCA 1993).
[10] Section 163.356(3)(b), Fla. Stat.
[11] See Op. Att'y Gen. Fla. 99-49 (1999) citing Ervin v.Collins, 85 So. 2d 852 (Fla. 1956); State ex rel. West v. Gray, 70 So. 2d 471 (Fla. 1954); State ex rel. Fraser v. Gay, 28 So. 2d 901
(1947).
[12] 244 So. 2d 420, 423 (Fla. 1971).
[13] See Summary Analysis CS/HB 909, House of Representatives Staff Analysis, dated 4/15/2008.
[14] Compare the language of section 4, Chapter 2008-197, Laws of Florida, to that contained in Chapter 2000-467, Laws of Florida, dealing with the Northern Palm Beach Improvement District. As discussed in Informal Opinion to Rubin, dated 4/1/04, at least three supervisors of the Northern Palm Beach Improvement District are required to be "residents of Palm Beach County, Florida, and owners of lands within said District." The special act goes on to provide that "the other two Supervisors . . . need not be residents of the State of Florida."And see, e.g., s. 343.53(2)(d)3., Fla. Stat., authorizing the Governor to "appoint a citizen member to the [South Florida Regional Transportation Authority] who is not a member of the county commission but who is a resident and a qualified elector of that county;" s.267.075(3)(a), Fla. Stat. ("citizen member" to the Grove Advisory Council); s. 272.18(2)(a), Fla. Stat. ("citizen members" of the Governor's Mansion Commission); s. 343.73(2)(b) ("citizen member" of the Tampa Bay Commuter Transit Authority).
[15] See generally 9 Fla. Jur. 2d Civil Servants s. 19, citing 63A Am.Jur. 2d Public Officers and Employees s. 40. Cf. State v. Grassi,492 So. 2d 474 (Fla. 4th DCA 1986), approved en banc 532 So. 2d 1055 (Fla. 1988) (statute requiring residency of a candidate at the time of qualification held unconstitutional as the Constitution requires residency only at the time of election).
[16] 9 Fla. Jur. 2d, supra, and Tillson v. State, 172 So. 918 (Fla. 1937); State ex rel. Landis v. Ward, 158 So. 273 (Fla. 1934).)
[17] State ex rel. Landis v Ward, 158 So. 273, 276 (Fla. 1934).See 63C Am. Jur. 2d Public Officers and Employees s. 56, stating:
 "Eligibility to public office is of a continuing nature and must exist at the commencement of the term of office and during the occupancy of the office. The fact that the candidate may have been qualified at the time of his election is not sufficient to entitle him to hold the office, if at the time of the commencement of the term or during the continuance of the incumbency he ceases to be qualified."
Compare 67 C.J.S. Officers s. 74c., stating:
 "A vacancy in office for any of the causes enumerated in the constitution or a statute is usually regarded as occurring at the time of the happening of the event which is the cause of the vacancy, in which case no judicial determination is necessary. However, this rule is not applicable to all grounds for the occurrence of a vacancy, and if officers are eligible at the time they take office, their subsequent ineligibility, although it may afford ground for removal, does not vacate the offices ipso facto so as to warrant, without further action, the election of their successors."
[18] Section 112.3135(2)(a), Florida Statutes. And see s.112.3135(1)(a), defining "Agency," (b) defining "Collegial body," and (c) defining "Public official," for purposes of the statute.
[19] Section 112.322(3)(a) and (b), Florida Statutes.
[20] See Op. Att'y Gen. Fla. 07-39 (2007) (a municipality may adopt an ethics code more stringent than, or with provisions differing from, the provisions of Part III, Chapter 112, Florida Statutes, as long as the municipality's ordinances do not conflict with the state statutes).
[21] 635 So. 2d 937 (Fla. 1994).